**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| OBM, INC., | |
| Plaintiff, | Civil Action No: 4:23-cv-01798 |
| v. | **JURY TRIAL DEMANDED** |
| LANCIUM LLC, | |
| Defendant. | |

**PLAINTIFF OBM, INC.'S RESPONSE IN OPPOSITION TO
DEFENDANT LANCIUM LLC'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER / DECLARATORY JUDGMENT JURISDICTION**

## TABLE OF CONTENTS

I.      SUMMARY OF ARGUMENT ................................................................1

II.     STATEMENT OF ISSUES ..................................................................3

III.    NATURE AND STAGE OF THE PROCEEDINGS ..........................................4

IV.     STATEMENT OF RELEVANT FACTS ......................................................4

        A.      OBM's Foreman Software .......................................................4

        B.      History Between OBM and Lancium ............................................5

        C.      Lancium's Litigation History ..................................................9

V.      LEGAL STANDARD .......................................................................10

VI.     ARGUMENT ...............................................................................12

        A.      Lancium Affirmatively Acted to Enforce Its Patent Rights Against
                Lancium ...........................................................................13

                1.      Lancium's Affirmative Acts Alleging Infringement ..................13

                2.      There are no "magic words" to confer declaratory judgment
                        jurisdiction ...............................................................19

                3.      Whether a patentee has conducted an infringement investigation is
                        irrelevant to declaratory judgment jurisdiction.........................21

                4.      Lancium's litigation history supports a finding of declaratory
                        judgment jurisdiction ....................................................23

        B.      The Court Should Use Its Discretion to Hear OBM's Declaratory Judgment
                Action and Deny Lancium's Motion to Dismiss ................................24

VII.    CONCLUSION..............................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*ABB Inc. v. Cooper Indus.,*
  *LLC,* 635 F.3d 1345 (Fed. Cir. 2011) ............................................................... 11

*Arkema Inc. v. Honeywell Int'l, Inc.,*
  706 F.3d 1351 (Fed. Cir. 2013) ........................................................................ 19

*Arris Grp., Inc. v. British Telecomms. PLC,*
  639 F.3d 1368 (Fed. Cir. 2011) ........................................................................ 19

*Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,*
  846 F.2d 731 (Fed. Cir. 1988) .......................................................................... 18

*Asia Vital Components Co., Ltd. v. Asetek Danmark A/S,*
  837 F.3d 1249 (Fed. Cir. 2016) ........................................................................ 11

*BearBox LLC v. Lancium LLC,*
  No. 1:21-cv-00534-GBW-CJB, Dkt. 1 (D. Del. Apr. 14, 2021) ........................ 9

*Capo, Inc. v. Dioptics Med. Prods., Inc.,*
  387 F.3d 1352 (Fed. Cir. 2004) ........................................................................ 24

*Choice Inc. of Tex. v. Greenstein,*
  691 F.3d 710 (5th Cir. 2012) ............................................................................ 12

*Danisco U.S. Inc. v. Novozymes A/S,*
  744 F.3d 1325 (Fed. Cir. 2014) ................................................................... 18, 20

*Gabriel v. City of Plano,*
  202 F.3d 741 (5th Cir. 2000) .............................................................................. 3

*Genentech v. Eli Lilly & Co.,*
  998 F.2d 931 (Fed. Cir. 1993) .......................................................................... 24

*Glob. Tubing LLC v. Tenaris Coiled Tubes LLC,*
  No. 4:17-CV-3299, 2018 WL 3496739 (S.D. Tex. July 20, 2018) ................... 16

*Goodyear Tire & Rubber Co. v. Releasomers, Inc.,*
  824 F.2d 953 (Fed. Cir. 1987) .......................................................................... 24

*Hewlett-Packard Co. v. Acceleron LLC,*
  587 F.3d 1358 (Fed. Cir. 2009) ................................................................. *passim*

*Innovative Therapies, Inc. v. Kinetic Concepts, Inc.,*
  599 F.3d 1377 (Fed. Cir. 2010) ........................................................................ 23

*JD Fields & Co., Inc. v. Sheet Pile LLC*,
    No. 4:20-CV-01411, 2021 WL 3813357 (S.D. Tex. Aug. 24, 2021) ............................ 11

*Kmart Corp. v. Key Indus., Inc.*,
    877 F. Supp. 1048 (E.D. Mich. 1994) ......................................................................... 12, 20

*Knauf Insulation, Inc. v. Rockwool Int'l A/S*,
    788 F. App'x 728 (Fed. Cir. 2019) ................................................................................. 19

*Lancium LLC v. Layer1 Techs., Inc.*,
    No. 6:20-cv-739-ADA, Dkt. 1 (W.D. Tex. Aug. 14, 2020) ............................................. 9

*Lancium LLC v. U.S. Data Mining Group, Inc. d/b/a US Bitcoin*,
    No. 6:23-CV-00344-KC, Dkt. 1 (W.D. Tex. May 10, 2023) ......................................... 10

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118  (2007) ................................................................................................. 10, 11

*Micron Tech., Inc. v. Mosaid Techs., Inc.*,
    518 F.3d 897 (Fed. Cir. 2008 ..................................................................................... 23, 24

*PharmaNet, Inc. v. DataSci Liab. Co.*,
    No. 3:08-cv-02965-GEB-DEA, 2009 WL 396180 (D.N.J. Feb. 17, 2009) ................... 23

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,
    556 F.3d 1294 (Fed. Cir. 2009) .................................................................................... 22

*SanDisk Corp. v. STMicroelectronics, Inc.*,
    480 F.3d 1372 (Fed. Cir. 2007) .......................................................... 11, 17, 20, 24

*Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*,
    778 F.3d 502 (5th Cir. 2015) ....................................................................................... 12

**Rules**

Federal Rule of Civil Procedure 12(b)(1) .................................................................. 4, 11

Plaintiff OBM, Inc. ("OBM") submits this response in opposition to Defendant Lancium LLC's ("Lancium") Motion to Dismiss for Lack of Subject Matter / Declaratory Judgment Jurisdiction (Dkt. 17, "Motion").

## I.    SUMMARY OF ARGUMENT

Lancium's Motion paints an obscure view of the facts by both omitting key pieces of the puzzle and including irrelevant emails to concoct some sort of Taylor Swift exception to the Declaratory Judgment Act, whereby any off-topic discussion is evidence that there is no justiciable case and controversy.  Rather than look at the totality of circumstances as the law commands, Lancium tries to isolate and downplay each *individual* event.  This is part of Lancium's strategy of failing to take responsibility for its affirmative actions that gave rise to this lawsuit.

OBM and Lancium have adverse legal interests and a substantial, real, and immediate controversy about noninfringement for the Court to resolve.  As shown in the Complaint and the attached supporting declaration, Lancium (1) accused OBM's customers of infringing its patents; (2) had its IP litigation counsel—the same counsel involved in prior patent enforcement campaigns involving U.S. Patent No. 10,608,433 (the "'433 Patent" or "Patent-in-Suit")—send a letter, dated April 3, 2023, to OBM specifically identifying the '433 Patent and OBM's Foreman software and stating that "[b]ased on publicly available information . . . the functionality of [OBM's] Foreman Software may relate to the subject matter" of the '433 Patent (referred to hereafter as the "April 3rd letter"); (3) for months, and in the midst of its repeated infringement allegations, refused to provide any business terms to OBM; (4) finally offered "business terms" that would preclude OBM from continuing to offer CLR compliance functionality to its customers and split revenues 90/10 in Lancium's favor; and (5) has a history of asserting the Patent-in-Suit against cryptocurrency companies.  Furthermore, after receiving Lancium's April 3rd letter, OBM—on the very next

day—disabled the CLR compliance functionality in its Foreman software.  Declaration of Daniel Lawrence ("Lawrence Decl.") ¶ 20.[1]  OBM wants to re-enable CLR compliance functionality but cannot do so under the threat of a lawsuit accusing it or its clients of infringing the '433 Patent. *Id.*  When OBM disabled the CLR compliance functionality it was in the midst of assisting a client with testing to become CLR compliant.  The client made multiple requests to OBM to re-enable the functionality.  *Id.* ¶ 21.  Lancium's threats have forced OBM to disable functionality, which has caused harm to OBM's customer relationships.  Accordingly, there is plainly a substantial controversy between OBM and Lancium sufficient to warrant declaratory judgment and there is no basis for declining jurisdiction.

Lancium's Motion asks the Court to ignore these circumstances by arguing that it was unreasonable for OBM to believe there was a threat of litigation because of "legitimate business negotiations" between the parties.  Dkt. 17 at 3.  This is simply not true.  In fact, Lancium's "legitimate business negotiations" argument is belied by Lancium's own actions.  For instance, Lancium request that its IP litigation counsel send the April 3rd letter and the content of the letter show that there were no legitimate business negotiations between the parties prior to April 3, 2023. And after OBM responded to Lancium's April 3rd letter, Lancium strung OBM along for several weeks by making vague offers of negotiations in which Lancium refused to offer any concrete business terms.  Such a blatant mischaracterization of the parties' prior interactions by Lancium cannot be used to defeat OBM's request for declaratory relief.

Despite Lancium's attempts to avoid "magic words" such as "litigation" or "infringement" in its April 3rd letter and spin Lancium's threats and OBM's attempts to secure a resolution as

---

[1] References to the Lawrence Declaration herein refer to the Declaration of Daniel Lawrence in Support of OBM's Response in Opposition to Defendant's Motion to Dismiss filed contemporaneously herewith.

friendly, the totality of the circumstances show that Lancium has taken affirmative actions to enforce the '433 Patent against OBM.  OBM's declaratory judgment action seeks a declaration that its Foreman software, which includes the CLR compliance functionality it desires to enable, does not infringe Lancium's '433 Patent.  Under these circumstances, the Court plainly has jurisdiction to grant OBM's declaratory relief.

## II.    STATEMENT OF ISSUES

Whether this Court has jurisdiction over OBM's suit for a declaration of non-infringement of the '433 Patent, where: (1) Lancium made an express charge that OBM's customers using OBM's Foreman software infringe Lancium's patents; (2) Lancium's IP litigation counsel sent a letter to OBM identifying OBM's Foreman software and the '433 Patent and stated that the Foreman software may relate to the '433 Patent, and requested OBM respond; (3) Lancium offered one-sided business terms that would force OBM from offering certain functionality within the Foreman software; and (4) Lancium has a history of enforcing the '433 Patent against companies similar to OBM in the cryptocurrency industry.

Whether this Court should decline to exercise its broad discretion where: (1) Lancium has not offered a well-founded reason for declining jurisdiction; and (2) an actual controversy exists because OBM desires to re-enable to functionality in the Foreman software that has been accused of infringement and OBM has the right to resolve this dispute.

A district court's decision regarding declaratory relief is reviewed for abuse of discretion. *Gabriel v. City of Plano*, 202 F.3d 741, 744 (5th Cir. 2000).

III.     **NATURE AND STAGE OF THE PROCEEDINGS**

OBM filed its Complaint for Declaratory Judgment of Non-infringement of the '433 Patent on May 16, 2023.  Dkt. 1.  On June 9, 2023, Lancium filed its Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.  Dkt. 17.

IV.     **STATEMENT OF RELEVANT FACTS**

A.     **OBM's Foreman Software**

Since 2018, OBM has been providing software solutions to cryptocurrency companies through its software management program, Foreman.  Foreman provides for the remote monitoring and management of virtually all aspects of cryptocurrency mining operations.  Foreman further offers site and farm visualization, reporting and diagnostics, security auditing, and integrations with non-miner devices (such as network switches, PDUs, cooling towers, etc.).  Cryptocurrency mining is an energy-intensive process, so many cryptocurrency companies have made attempts to reduce energy cost, which would, in turn, increase the value of the mined cryptocurrency.  Many cryptocurrency companies operating in Texas have also begun participating in the many energy curtailment programs offered by the Electric Reliability Council of Texas ("ERCOT") by participating in Demand Response, which preserves ERCOT system reliability and mitigates price spikes by collaborating with market participants who have the ability to reduce or modify energy use in response to instructions or signals.  Companies that want to participate in Demand Response can qualify and register as a Controllable Load Resource ("CLR"), which is a load resource capable of controllably reducing or increasing consumption under Dispatch control by ERCOT.  To meet the energy curtailment demands of its customers, Foreman has a "Power Control" feature that provides a customer with the ability to adjust its energy consumption at a site to a specific megawatt (MW) target.  Foreman also has the functionality to assist its Texas customers in passing ERCOT's SCED qualification test.

Beginning in August 2022, Foreman also assisted customers in passing compliance testing for ERCOT.  Lawrence Decl. ¶ 5.  OBM successfully assisted one customer in becoming CLR compliant and was in the process of assisting another customer ("Customer 2") in obtaining the CLR designation with ERCOT.  *Id.* ¶¶ 7-8, 14.  However, due to the litigation threats from Lancium, on April 4, 2023, OBM was forced to pause the CLR compliance functionality.  *Id.* ¶ 20.  The pausing of Foreman's CLR compliance functionality negatively impacted Customer 2 and curtailed Foreman's pursuit of additional customers.  *Id.* ¶¶ 21-22.

## B.    History Between OBM and Lancium

On November 17, 2022, Mr. Ian Rock, Lancium's Vice President of IT Operations, coordinated a meeting with Mr. Daniel Lawrence, OBM's founder and CEO, at the Texas Blockchain Summit.  Lawrence Decl. ¶ 12.  Mr. Rock and Mr. Ray Cline, Lancium's Chief Technology Officer, attended the meeting on behalf of Lancium.  *Id.*  In that meeting, Mr. Rock explicitly charged that "customers using [OBM's Foreman software] could be infringing on Lancium's patents."  *Id.*; Dkt. 1 ¶ 22.  Mr. Lawrence was immediately concerned and felt threatened.  Lawrence Decl. ¶ 12.  After issuing the threat, Mr. Rock then discussed how OBM and Lancium were both running software in the same facility through a common customer and how OBM and Lancium should meet and discuss going to market together since CLR and energy management was Lancium's specialty and OBM was "undervaluing" energy management by offering it for a lower price.  *Id.*

After Mr. Rock's threat, Mr. Lawrence was, understandably, concerned about being sued for patent infringement.  *Id.*  Following the Texas Blockchain Summit in January 2023, OBM decided to sign a limited NDA to show good faith to provide Lancium with access to OBM's SOC 2 report in an attempt to avoid litigation.  *Id.* ¶ 13.

5

On March 28, 2023, Mr. Lawrence was featured on the Compass Mining podcast, the Mining Pod, where he discussed the upcoming CLR capabilities of OBM's Foreman software. *Id.* ¶ 16. On the same day, Mr. Rock reached out to OBM requesting that the parties discuss business terms. *Id.* On April 3, 2023, Mr. Rock again reached out to OBM requesting that the parties discuss business terms. *Id.* ¶ 17.

Despite not providing OBM with business terms from November 2022 until April 2023, Lancium apparently believed OBM's six-day delay in responding necessitated yet another infringement allegation. On April 3, 2023, Lancium's IP litigation counsel, Kurt W. Rohde with Barnes & Thornburg LLP, sent a letter to Mr. Lawrence. Dkt. 1-2. Of note, Mr. Rohde's company profile on Barnes & Thornburg's website states that Mr. Rohde has "over 14 years focused in complex patent litigation [and] regularly serves as patent trial counsel for multibillion dollar corporations." Ex. 1.[2] Further, Barnes & Thornburg represents Lancium in the patent litigation suits relating to the '433 Patent. The April 3rd letter states:

> ***My client Lancium Inc. has become aware of your activities providing cryptocurrency miner management software through your www.foreman.mn domain.*** As you likely know, Lancium is an energy technology and infrastructure company that advances the decarbonization and stability of the electric power grid. Since 2017, Lancium has developed numerous technologies for balancing and stabilizing the power grid through, for example, load management of datacenters via the Lancium Smart Response™ technology. To date, Lancium has obtained over 25 patents relating to the technology it has developed. ***Based on publicly available information, it is possible that the functionality of your Foreman Software may relate to the subject matter of patented technology developed by Lancium. As an example, I would like to direct your attention to U.S. Patent No. 10,608,433, attached here for your convenience.***
>
> ***I understand my client has attempted to reach out to you numerous times to discuss your software but you have not responded.*** I ask that you please contact Ian Rock, Lancium's Vice President IT Operations, at *ian.rock@lancium.com*, so that we can have a productive conversation. My client

---

[2] Documents referred to as "Exhibits" herein are submitted as exhibits to the Declaration of Rodney Miller in Support of OBM's Response in Opposition to Defendant's Motion to Dismiss.

is receptive to commercial opportunities for collaboration and is certainly willing to discuss this further.

Dkt. 1-2 (emphasis added). To be sure, this letter was carefully worded to try to defeat declaratory judgment jurisdiction by avoiding the use of "magic words" but as discussed below, a threat does not need to use the words "litigation" or "infringement" to constitute the threat it so clearly intends to be.

On April 4, 2023, Mr. Lawrence disabled the CLR functionality within Foreman and reluctantly replied to Mr. Rock's prior emails requesting that the parties coordinate a meeting. Lawrence Decl. ¶¶ 18, 20. Shortly thereafter, Mr. Lawrence and Mr. Rock met to discuss the April 3rd letter. *Id.* ¶ 19. During the meeting, Mr. Rock stated that he would follow-up soon with Lancium's proposed business terms. *Id.* Despite what Lancium's Motion implies were friendly business negotiations between Lancium and OBM, even after threatening OBM again, Lancium spent the next several weeks promising to provide OBM with a copy of the proposed business opportunity referenced in its attorney's April 3rd letter. *Id.* ¶¶ 19, 25, 27.

On April 5, 2023, Mr. Lawrence had a phone conversation with Michael McNamara, CEO of Lancium. *Id.* ¶ 23. Mr. McNamara did not present Mr. Lawrence with Lancium's proposed business terms. *Id.* After not receiving Lancium's proposed terms, on April 17, 2023, Mr. Lawrence reached out to Mr. Rock to inquire about the status. *Id.* ¶ 24. Scott McFarland, Lancium's CRO, responded in Mr. Rock's place requesting that the two have meeting. *Id.*

On April 26, 2023, Mr. Lawrence and Mr. McFarland had a virtual meet and greet. *Id.* ¶ 25. Mr. McFarland **still** did not present Mr. Lawrence with Lancium's proposed business terms. *Id*.

Nevertheless, feeling that Lancium was using the April 3rd letter and the prolonged discussions with no proposed business terms, to protect OBM and its clients, on May 2, 2023,

OBM's outside counsel sent a letter to Mr. Rohde stating that OBM did not infringe the '433 Patent and that Lancium has failed to proposed business terms as suggested in the April 3rd letter. *Id.* ¶ 26. The same day, Mr. McFarland reached out to arrange a meeting with Mr. Lawrence. *Id.* ¶ 27.

On May 4, 2023, Mr. Lawrence and Mr. McFarland met and within the first two minutes of the call, Mr. McFarland stated that "it's obvious that we're both trying to avoid litigation," implying that Lancium has intentions to sue. *Id.* Mr. McFarland then stated that he would draft the business terms while on a trip at the DC World conference. *Id.*

On May 9, 2023, Mr. Lawrence and Mr. McFarland had a telephone call to discuss Lancium's business terms. *Id.* ¶ 28. During the call, Mr. McFarland proposed terms in which all of OBM's CLR revenue would be split 90/10, with 90% of the revenue being giving to Lancium. *Id.* Mr. McFarland also stated that Lancium intended to start pushing into other energy curtailment markets outside of Texas and that Lancium was targeting customers that exceed 50 MW. *Id.* When Mr. Lawrence asked what would happen with customers under 50 MW, or customers that cannot participate in CLR based on their load profile, Mr. McFarland stated that "[Lancium] could probably build a cloud connector where [it] integrate[s] with the CSPs and send[s] the signal to turn on/off to Foreman." *Id.* In other words, Lancium would not be providing services to customers with lower load profiles and Foreman's Demand Response CLR functionality would have to be integrated with Lancium. *Id.*

Lancium's Motion leans heavily into the argument that there were ongoing business discussions, but the facts show that OBM justifiably believed further negotiations were pointless and that Lancium would accept nothing short of OBM's capitulation. The facts also show that Lancium, more than once, accused OBM of infringing the '433 Patent, and that in response to the allegations of infringement OBM disabled the Demand Response CLR functionality of Foreman.

8

The facts further show that, after a months-long delay in which OBM was under threat of being sued, Lancium finally offered terms that would have forced OBM to modify its product and abandon ERCOT and other managed energy markets.

### C.    Lancium's Litigation History

Lancium is litigious and its firm of choice is Barnes & Thornburg—the firm that sent the April 3rd threat letter to OBM.  In 2020, Barnes & Thornburg filed a patent infringement suit on behalf of Lancium against Layer1 Technologies, Inc., alleging infringement of the '433 Patent. *Lancium LLC v. Layer1 Techs., Inc.*, No. 6:20-cv-739-ADA, Dkt. 1 (W.D. Tex. Aug. 14, 2020).

In 2021, BearBox LLC sued Lancium, alleging that BearBox's founder, Austin Storms, was the true inventor of the '433 Patent.  *BearBox LLC v. Lancium LLC*, No. 1:21-cv-00534-GBW-CJB, Dkt. 1 (D. Del. Apr. 14, 2021).  Lancium, once again represented by Barnes & Thornburg, prevailed in the litigation with the court finding BearBox did not satisfy its burden of proving Mr. Storms was the inventor.  *BearBox LLC v. Lancium LLC*, No. 1:21-cv-00534-GBW-CJB, Dkt. 262 (D. Del. Mar. 6, 2023).  On March 7, 2023, the day after the court's finding, Lancium issued a press release about the case and threatened that "Lancium intends to continue aggressively defending its intellectual property as well as the technologies the company develops and commercializes."  Ex. 2 at 2.  Lancium also touted its spending of "millions of dollars and years of effort to develop" its product and how the court's decision "further confirms the strength and value of [its] patented technology."  *Id*.

True to its word, Lancium did not wait long—three days to be exact—to file patent infringement lawsuits asserting the '433 Patent and other Lancium patents against multiple cryptocurrency software companies.  A May 10, 2023 complaint—filed by Barnes & Thornburg—accused US Data King Mountain LLC, U.S. Data Mining Group, Inc., and US Mining Infrastructure Operations, LLC, of infringing the '433 Patent.  Dkt. 1 ¶ 19; *Lancium LLC v. U.S.*

*Data Mining Group, Inc. d/b/a US Bitcoin*, No. 6:23-CV-00344-KC, Dkt. 1 (W.D. Tex. May 10, 2023).

In addition to the filed lawsuits as alleged in the Complaint, OBM is aware of multiple cryptocurrency software companies that are considering assisting its customers in participating in ERCOT's energy curtailment programs and qualifying and participating as a CLR with ERCOT have been approached by Lancium with threats of enforcing the '433 Patent.   Dkt. 1 ¶ 20; Lawrence Decl. ¶ 30.

Having been threatened with litigation against its customer and core software product, and given Lancium's litigation campaign involving the '433 Patent, OBM filed this declaratory judgment action seeking a declaration that the Foreman software identified Lancium's April 3rd letter and referenced during the November 17, 2022, meeting does not infringe the '433 Patent identified in the letter.

## V.      LEGAL STANDARD

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, [with irrelevant exceptions], any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."   28 U.S.C. § 2201(a).   The test for whether a declaratory judgment action satisfies the case or controversy requirement of Article III of the Constitution "is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).   *MedImmune* rejected the

Federal Circuit's long-standing "reasonable apprehension of imminent suit" test.  *See id*. at 132 n.11.

 In post-*MedImmune* cases, the Federal Circuit recognized that "*MedImmune* rejected [the] prior, more stringent standard" in favor of a more lenient test.  *ABB Inc. v. Cooper Indus., LLC,* 635 F.3d 1345, 1348 (Fed. Cir. 2011).  Quoting *MedImmune*, the Federal Circuit has explained that "the declaratory judgment procedure is an alternative to pursuit of the arguably illegal activity" and that "putting the challenger to the choice between abandoning his rights or risking prosecution—is a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate."  *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1378-79 (Fed. Cir. 2007).

Since *MedImmune*, a plaintiff bringing a declaratory judgment action in the patent context can satisfy the case or controversy requirement by alleging facts that show: (1) conduct by the defendant that can reasonably be inferred as demonstrating the intent to enforce a patent; and (2) a real and immediate threat of a lawsuit against the plaintiff based on a product that allegedly infringes the defendant's patent.  *JD Fields & Co., Inc. v. Sheet Pile LLC*, No. 4:20-CV-01411, 2021 WL 3813357, at *5 (S.D. Tex. Aug. 24, 2021) (citing *Asia Vital Components Co., Ltd. v. Asetek Danmark A/S*, 837 F.3d 1249, 1254-55 (Fed. Cir. 2016)).

Importantly, "[t]he purpose of a declaratory judgment action cannot be defeated simply by the stratagem of a correspondence that avoids the magic words such as 'litigation' or 'infringement.'"  *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009).  Where a patentee alleges a patent is "relevant" to a party's product and tries to prevent the party from filing suit, declaratory judgment jurisdiction exists.  *Id.* at 1363.  Declaratory judgment jurisdiction is also appropriate when a declaratory judgment plaintiff believes further negotiations

are fruitless and the patentee is seeking "nothing short of total capitulation." *Kmart Corp. v. Key Indus., Inc.*, 877 F. Supp. 1048, 1054 (E.D. Mich. 1994).

Furthermore, a Rule 12(b)(1) motion like Lancium's presents the Court with a factual dispute since it includes affidavits. *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (citation omitted). "To defeat a factual attack, a plaintiff must prove the existence of subject-matter jurisdiction by a preponderance of the evidence and is obliged to submit facts through some evidentiary method to sustain his burden of proof." *Id.* (quotations and citations omitted). In determining whether the plaintiff has met its burden, the court may rely on pleaded and undisputed facts or on findings that resolve factual disputes. *See Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012). Pursuant to Fifth Circuit precedent:

> [T]he district court is to accept as true the allegations and facts set forth in the complaint. Additionally, the district court is empowered to consider matters of fact which may be in dispute. The district court consequently has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

*Id.* (citation omitted). However, a "motion to dismiss for lack of subject matter jurisdiction should be granted *only* if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.* (citation omitted and emphasis added).

## VI.    ARGUMENT

The facts OBM alleges in its complaint and the accompanying declaration of Mr. Lawrence demonstrate there is a substantial controversy between Lancium and OBM regarding OBM's right to continue offering the Demand Response CLR functionality in its Foreman software. *First*, the adversity arises from Lancium's affirmative acts of explicitly accusing OBM's customers of infringing its patents, having its litigation counsel send the April 3rd letter accusing OBM's

12

Foreman software of infringing the '433 Patent, offering business terms that would preclude OBM from offering Demand Response CLR functionality in its Foreman software, and Lancium's history of enforcing its patents through litigation against other crypto-mining companies. *Second*, the parties' controversy is real and immediate because OBM was selling the Foreman software with the CLR functionality prior to the filing of its complaint and immediately disabled this functionality after the threatened litigation. OBM, however, desires to reenable the CLR functionality in Foreman. *Finally*, the Court's exercise of jurisdiction comports with the purposes of the Declaratory Judgment Act, and the circumstances do not justify a discretionary denial of jurisdiction.

### A.      Lancium Affirmatively Acted to Enforce Its Patent Rights Against Lancium

The totality of circumstances demonstrate that Lancium affirmatively acted in a manner that can be reasonably inferred as demonstrating intent to enforce the '433 Patent against OBM's Foreman software product, giving rise to an actual controversy between the parties. All of the following circumstances support this conclusion: (1) Lancium's implied threat of litigation against OBM and its customers; (2) OBM's removal of CLR functionality in Foreman; (3) Lancium's offer of business terms that preclude OBM from offering its CLR functionality; and (4) Lancium's prior litigious conduct.

### 1.      Lancium's Affirmative Acts Alleging Infringement

Lancium alleged infringement orally from its representatives and in writing from its IP litigation counsel. Lancium's Motion attempts to distract from these facts by focusing on irrelevant emails from Mr. Lawrence. Lancium makes much of the email from Mr. Lawrence where he mentions attending a Taylor Swift concert, meriting four separate mentions in the Motion. But there is no Taylor Swift exception to the Declaratory Judgment Act. Lancium is falsely implying that any correspondence from an accused that does not display abject terror at the

13

possibility of being sued means that the party did not have any such fear.  That is not the law and Lancium cites no case supporting its argument.

As alleged in the Complaint, in November of 2022, Mr. Rock told Mr. Lawrence that OBM's clients use of Foreman to become CLR compliant could be infringing on one or more of Lancium's patents and that OBM was "undervaluing" its energy management by offering it for a lower price than Lancium.  Dkt. 1 ¶ 22; Lawrence Decl. ¶ 12.  Lancium attempts to offer its one-sided story of the November 2022 meeting through the declaration of Mr. Rock, alleging that Mr. Rock "did not mention patents, let alone infringement, during this meeting."  Dkt. 17-2 at 21, Rock Decl. ¶ 8.  But this is not true.  Lawrence Decl. ¶ 12.  Rather, Mr. Lawrence's account of Mr. Rock's statements regarding OBM's clients is consistent with its boastful declaration of how "Lancium was the only one with a software solution to get clients certified as CLR assets" and CLR projects is Lacnium's "expertise."  Dkt. 17-2 at 19-21, Rock Decl. ¶¶ 4, 8.  Moreover, Mr. Rock's account that he allegedly "did not mention patents, let alone infringement" is inconsistent with Lancium's actions, including Lancium's statement in a press release that it intended to "continue aggressively defending its intellectual property," Ex. 2 at 2, and Lancium's April 3rd letter alleging infringement of the '433 Patent by OBM's Foreman software.  Indeed, Mr. Cline, who also participated in the Texas Blockchain Summit in November 2022 admitted to telling Mr. Lawrence: "we have an extensive set of patents and intellectual property covering our products and services and . . . we strongly protect our intellectual property."  Dkt. 17-2 at 6, Cline Decl. ¶ 4.  Therefore, Mr. Rock commenting on how OBM's customers could infringe Lancium's patents is completely consistent with both Lancium's statements in press releases and by its CTO that Lancium aggressively enforces its IP.

After OBM was featured on the Compass Mining podcast where it discussed the CLR capabilities of Foreman on March 28, 2023, Mr. Rock sent an email, dated April 3, 2023, to Mr. Lawrence stating:

> I reached out again last week in an endeavor to see if we could get together to discuss Foreman and Lancium business.  Hoping you can get back to me but in the meantime we will send a letter over to you.

Ex. 5 at 1.  Lancium aggressively followed Mr. Rock's email with a letter from Kurt W. Rohde with Barnes & Thornburg LLP, Lancium's IP litigation counsel, stating that Lancium had formed a belief, "[b]ased on publicly available information" that OBM's Foreman Software "may relate to the subject matter of patented technology developed by Lancium" and specifically identified and attached the '433 Patent.  Dkt. 1-2; Dkt. 1 ¶ 23; *Hewlett-Packard*, 587 F.3d at 1363 (finding that a patentee *inter alia* "assert[ing] a patent as 'relevant' to the other party's specific product line" supports declaratory judgment jurisdiction).  The letter also stated that Lancium "attempted to reach out to [OBM] numerous times to discuss [OBM's] software but [OBM has] not responded."  Dkt. 1-2; Dkt. 1 ¶ 23.  While the letter goes on to state that Lancium is "receptive to commercial opportunities," Dkt. 1-2, Lancium was not looking to negotiate a business deal.  Mr. Rohde is not a business attorney; instead, Mr. Rohde has "over 14 years focused in complex patent litigation [and] regularly serves as patent trial counsel for multibillion dollar corporations."  Ex. 1 at 1.  Further, Mr. Rohde's firm, Barnes & Thornburg, represents Lancium in both patent litigation suits filed by Lancium relating to the '433 Patent.  Lancium admits that it reviewed "publicly available information" on OBM's Foreman software, indicating that Lancium devoted some effort to studying Foreman.  This Court has found that a patentee's awareness of a declaratory judgment plaintiff's product and "devot[ion of] at least some effort to studying" the product supports declaratory judgment jurisdiction.  *Glob. Tubing LLC v. Tenaris Coiled Tubes LLC*, No. 4:17-CV-

15

3299, 2018 WL 3496739, at *5 (S.D. Tex. July 20, 2018).  Given this, Mr. Lawrence reasonably interpreted the letter from Lancium's Outside IP Counsel as an intent to enforce Lancium's rights in the '433 Patent against OBM.  Lawrence Decl. ¶ 17.  Tellingly, none of the declarations submitted by Lancium mention the April 3rd letter or explain why Lancium felt the need to send a letter from its IP litigation counsel to OBM in the middle of alleged "legitimate business negotiations" regarding a business partnership—as alleged in Lancium's Motion—if it was not intending to enforce its rights in the '433 Patent.  The only reasonable explanation for sending the April 3rd letter was to accuse OBM of infringing the '433 Patent.

On April 4, 2023, in response to the April 3rd letter, Mr. Lawrence immediately disabled the CLR functionality of Foreman.  *Id.* ¶ 20.  Mr. Lawrence also had a telephone conversation with Mr. Rock that day.  *Id.* ¶ 19.  At the conclusion of the meeting, Mr. Rock committed to sending business terms to OBM.  *Id.*  No such business terms were provided.  *See* Dkt. 1 ¶ 25.  After receiving no business terms from Lancium, nearly a month later, on May 2, 2023, OBM's legal counsel sent a letter to Lancium stating that OBM's Foreman did not infringe the '433 Patent.  *Id.* ¶ 26; Lawrence Decl. ¶ 26.  On May 2, 2023, after the letter was sent to Lancium's counsel, Scott McFarland, Chief Revenue Officer of Lancium, reached out to Mr. Lawrence to request another meeting between the parties.  Dkt. 1 ¶ 27; Lawrence Decl. ¶ 27.  On May 4, 2023, Mr. Lawrence and Mr. McFarland had a conversation, during which Mr. McFarland stated that the parties were "both trying to avoid litigation."  Dkt. 1 ¶ 28; Lawrence Decl. ¶ 27.  Mr. McFarland's statement supports declaratory judgment jurisdiction.  *Hewlett-Packard*, 587 F.3d at 1362-63 (finding that a patentee *inter alia* trying to prevent the other party from filing suit supports declaratory judgment jurisdiction).  Mr. McFarland admits to telling Mr. Lawrence that Lancium wanted to avoid litigation but attempts to minimize his statement, claiming that it was "not intended as a threat."

Dkt. 17-2 at 11, McFarland Decl. ¶ 6.  However, Lancium's attempt to twist the story is irrelevant. Lancium's intent is not the standard; rather, a justiciable controversy exists where, under the totality of the circumstances, it was not unreasonable for the declaratory judgment plaintiff to interpret patentee's actions as implicitly asserting its intellectual property rights.  *Hewlett-Packard*, 587 F.3d at 1363.  Here, considering the totality of the circumstances including (1) Lancium stating that OBM's customers may infringe the '433 Patent, (2) Lancium's prior litigation history (discussed in more detail below), and (3) conversations between OBM and Lancium, it was reasonable for OBM to interpret Lancium's April 3rd letter as asserting its rights in the '433 Patent against OBM.  Lancium spends a great deal of its Motion asking the Court to ignore the April 3rd letter.  However, the letter was undeniably a threat of litigation, so much so that in response to the April 3rd letter, OBM disabled the CLR functionality of Foreman that was being used by one of OBM's customers.  Lawrence Decl. ¶¶ 20-21.  This customer was upset that OBM stopped providing the CLR functionality in the middle of testing, as it precluded the customer from becoming CLR compliant; but given the threats from Lancium, OBM felt it had no choice.  *Id.* These facts prove the existence of a case or controversy between OBM and Lancium.  *See SanDisk*, 480 F.3d at 1381; *cf. In re Qualcomm Litig.*, No. 17-CV-00108-GPC-MDD, 2017 WL 5985598, at *6 (S.D. Cal. Nov. 8, 2017) (citations omitted) ("Qualcomm's allegations of lost potential sales to Apple, goodwill, and business relationships sufficiently support a finding of statutory standing.").

Moreover, Lancium has filed patent infringement lawsuits asserting the '433 Patent against multiple cryptocurrency companies, such as Layer1 Technologies, Inc., US Data King Mountain LLC, U.S. Data Mining Group, Inc., and US Mining Infrastructure Operations, LLC, that offer energy curtailment services to assist companies in qualifying and participating as a CLR with ERCOT.  Dkt. 1 ¶ 19.  As alleged in the Complaint, OBM further believes that multiple

17

cryptocurrency companies that are considering assisting its customers in participating in ERCOT's energy curtailment programs and/or qualifying and participating as a CLR with ERCOT have been approached by Lancium with threats of enforcing the '433 Patent. *Id.* ¶ 20; Lawrence Decl. ¶ 30.

Given these facts, OBM need not wait for Lancium to launch its threatened suit. OBM is within its rights to bring this issue to a timely resolution. The issue is definite and concrete: whether OBM's Foreman technology practices the claims of the '433 Patent. Setting aside time and cost, waiting for the inevitable lawsuit by Lancium and turning off its CLR functionality hurts OBM's customer relationships in this competitive field. Lawrence Decl. ¶¶ 21-22.

This is "precisely the type of situation that the Declaratory Judgment Act was intended to remedy." *Danisco U.S. Inc. v. Novozymes A/S*, 744 F.3d 1325, 1332 (Fed. Cir. 2014). As Judge Markey correctly noted, before the Declaratory Judgment Act, potential infringement defendants faced:

> the sad and saddening scenario that led to enactment of the Declaratory Judgment Act. In the patent version of that scenario, a patent owner engages in a *danse macabre*, brandishing a Damoclean threat with a sheathed sword. Guerrilla-like, the patent owner attempts extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity.

*Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 734-35 (Fed. Cir. 1988) (citations omitted). Lancium does not want a business relationship with OBM; Lancium wants to paralyze OBM into inaction. If that does not work, it wants to leverage the threatened litigation to force OBM out of the market with an unreasonable 90/10 agreement. The Court has jurisdiction to adjudicate non-infringement and OBM is entitled to a determination of whether it can include certain functionality within its Foreman software.

2.      **There are no "magic words" to confer declaratory judgment jurisdiction.**

Lancium's argument that its April 3rd letter "does not support a finding of jurisdiction[ ] based on the language used" is unavailing.  Dkt. 17 at 15-16.  Lancium cites *Knauf Insulation, Inc. v. Rockwool Int'l A/S* to support its proposition that identification of a patent and product line "cannot establish adverse legal interests between the parties sufficient to support declaratory judgment jurisdiction."  788 F. App'x 728, 736 (Fed. Cir. 2019) (citations omitted); Dkt. 17 at 16. However, Lancium omitted key language from *Knauf*, which states that "a patent owner's communication to another party merely identifying its patent and the other party's product line, ***without more***, cannot establish adverse legal interests between the parties sufficient to support declaratory judgment jurisdiction."  *Knauf*, 788 F. App'x at 736 (emphasis added) (quotations and citations omitted).  OBM has shown there is "more," including litigation threats from Lancium, OBM's disabling of the CLR functionality in its Foreman software, and Lancium's prior litigation history, which support a finding of an actual controversy between OBM and Lancium.

Moreover, there are no "magic words" or specific language that needs to be used to confer declaratory judgment jurisdiction.  Lancium argues that there is no controversy because Lancium "never threatened litigation [or] asserted infringement."  Dkt. 17 at 15.  However, a specific threat of infringement is ***not*** required for declaratory judgment jurisdiction.  *See Hewlett-Packard*, 587 F.3d at 1362; *Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1379 (Fed. Cir. 2011). Nor is it "necessary that a patent holder make specific accusations" of infringement against the declaratory judgment plaintiff.  *Arkema Inc. v. Honeywell Int'l, Inc.*, 706 F.3d 1351, 1357 (Fed. Cir. 2013).  "The purpose of a declaratory judgment action cannot be defeated simply by the stratagem of a correspondence that avoids the magic words such as 'litigation' or 'infringement.'" *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009).  "Article III does

Case 4:23-cv-01798 Document 20 Filed on 06/30/23 in TXSD Page 24 of 31

not mandate that the declaratory judgment defendant have threatened litigation or otherwise taken action to enforce its rights before a justiciable controversy can arise." *Danisco*, 744 F.3d at 1330. An actual case or controversy can exist "even in situations in which there was no indication that the declaratory judgment defendant was preparing to enforce its legal rights." *Id.* Given Lancium's April 3rd letter from its IP litigation counsel, its representatives' continuing statements regarding infringement and litigation, and its litigation history of asserting the '433 Patent against other cryptocurrency software companies offering energy curtailment services, OBM reasonably construed from these prior interactions with Lancium as being a reference to the risk of a patent infringement lawsuit against OBM.[3] Tellingly, out of the four fact declarations submitted by Lancium, not a single one ever mentions the letter sent by its IP litigation counsel.

Lancium would have this Court believe that because the parties were allegedly in talks about partnership, litigation was completely off the table. Lancium's position is wrong. Rather, the Federal Circuit has recognized that "[i]t is quite possible for two parties to simultaneously consider nonlitigious settlement of a dispute, while at the same time maintaining an awareness that either settlement is improbable or that litigation is equally likely." *SanDisk*, 480 F.3d at 1381 (quotations and citations omitted). Further, courts have found that ongoing settlement negotiations do not require dismissal of declaratory judgment actions where the evidence indicates that a settlement short of total capitulation will not be accepted. *Kmart*, 877 F. Supp. at 1054. The only deal proposed by Lancium is one that would require OBM to focus exclusively on miner management and preclude OBM from offering energy curtailment CLR functionality within

---

[3] Lancium's Motion also argues that Mr. Lawrence's seemingly friendly email exchanges with Lancium show that OBM did not fear a patent infringement suit. Dkt. 17 at 19-20. But the Motion does not cite any cases supporting the argument that companies that do not either become belligerent or cower in fear when accused of infringement are deprived of rights under the Declaratory Judgment Act.

Foreman.  Dkt. 1 ¶ 28; Lawrence Decl. ¶ 28.  Therefore, further negotiations between OBM and Lancium were fruitless.

### 3.      Whether a patentee has conducted an infringement investigation is irrelevant to declaratory judgment jurisdiction.

Lancium's Motion argues that "the Complaint does not provide any evidence that Lancium evaluated OBM's Foreman software for infringement or has sufficient familiarity with it to make any such evaluation."  Dkt. 17 at 21.  The Complaint does not have to allege that Lancium has sufficient familiarity to allege infringement (discussed below in this section) but the implication that Lancium is unaware of how Foreman operated is untrue.

Lancium's feigned ignorance is inconsistent with its April 3rd letter—which was also included in the Complaint—that confirms Lancium's evaluation of "publicly available information" regarding the "functionality of [OBM's] Foreman Software" and how Forman "may relate to the subject matter of patented technology developed by Lancium."  Dkt. 1-2.  Aside from the "publicly available information," Lancium had access to Foreman software when Brandon Greenfield, Lancium's IT Controls Manager, received access credentials to Foreman on September 12, 2022, shortly before Lancium requested OBM's SOC 2 report.  Lawrence Decl. ¶ 9.  It is reasonable to assume that Lancium accessed Foreman after receiving credentials on September 12, 2022.  Mr. Greenfield was also included on several of the email chains between OBM and Lancium and was actively involved in the discussions between the parties after he received access to Foreman.  *See, e.g.*, Ex. 3; Ex. 4.  In fact, in response to Lancium requesting OBM's SOC 2 report, Mr. Lawrence sent the draft NDA to Mr. Greenfield, who then sent back the NDA with revisions which allowed Lancium to retain copies of OBM's confidential information.  Ex. 4 at 2; Lawrence Decl. ¶ 10.  The evidence shows Lancium evaluated Foreman in view of: (1) its statements in the

April 3rd letter; (2) Mr. Greenfield's access to the Foreman software; and (3) Mr. Greenfield's involvement in the discussions between OBM and Lancium.

Lancium's attempts to imply it does not have knowledge of Foreman ultimately do not matter because "it is irrelevant whether [Lancium] had conducted an adequate investigation or whether it subjectively believed [OBM] was infringing." *Hewlett-Packard*, 587 F.3d at 1363. The test for declaratory judgment jurisdiction in patent cases is ***objective*** and the objective words and actions of Lancium are controlling. *Id.* (citations omitted). "[C]onduct that can be reasonably inferred as demonstrating intent to enforce a patent can create declaratory judgment jurisdiction." *Id.* OBM has alleged facts showing: (1) at the time of the filing of its Complaint, Lancium was engaging in conduct that can reasonably be inferred as demonstrating the intent to enforce the '433 Patent; and (2) at the time that OBM filed its Complaint, there was a real and immediate threat of a lawsuit by Lancium against OBM based on the Foreman software.

OBM was using its CLR compliance functionality with customers when Lancium made oral threats of litigation. Lawrence Decl. ¶¶ 5, 7-8. Due to Lancium's actions, OBM was forced to take the affirmative step of disabling certain components from its product in an attempt to avoid a potential finding of willful infringement. *Id.* ¶¶ 20-22. "[D]eclaratory judgment jurisdiction is met when the patentee puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1298 (Fed. Cir. 2009) (quotations and citations omitted); *see also In re Qualcomm Litig.*, 2017 WL 5985598, at *6 (citations omitted) ("Qualcomm's allegations of lost potential sales to Apple, goodwill, and business relationships sufficiently support a finding of statutory standing.").

### 4.      Lancium's litigation history supports a finding of declaratory judgment jurisdiction.

Finally, Lancium argues that its prior litigation history does not support declaratory judgment jurisdiction.  Lancium is wrong.  As Lancium admits, prior litigation is a circumstance to be considered in assessing the totality of circumstances.  Dkt. 17 at 21.  While prior litigation "does not, *in the absence of any act directed toward [OBM]*, meet the minimum standard," *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1382 (Fed. Cir. 2010) (emphasis added), OBM has established facts that show affirmative acts directed toward OBM. Lancium has filed patent infringement lawsuits asserting the '433 Patent against multiple cryptocurrency software companies, Dkt. 1 ¶ 19, and Lancium has further made multiple threats about how OBM's Foreman software may infringe the '433 Patent, Lawrence Decl. ¶¶ 12, 17, 27. Moreover, Lancium has stated in press releases that it "intends to continue aggressively defending its intellectual property."  Ex. 2 at 2.  Public statements made by a patentee confirming its intent to continue an aggressive litigation strategy likewise support that there is a real and substantial dispute between OBM and Lancium.  *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 901 (Fed. Cir. 2008) (reversing dismissal of declaratory judgment complaint for lack of subject matter jurisdiction and ruling that patentee's prior history of suing other chip manufacturers and sending warning letters created a sufficient case or controversy even though the patentee never made any specific threats to the plaintiff).  OBM is entitled to bring this issue to resolution so it can continue to operate its business.  Thus, Lancium's litigation history, viewed in context of its actions, supports a finding that there is a case or controversy between OBM and Lancium.  *PharmaNet, Inc. v. DataSci Liab. Co.*, No. 3:08-cv-02965-GEB-DEA, 2009 WL 396180 (D.N.J. Feb. 17, 2009).

Contrary to Lancium's assertions, OBM and Lancium are direct competitors in the same market.  As asserted in the Complaint and confirmed by Lancium in its letter, the functionality of OBM's Foreman software "may relate to the subject matter of patented technology developed by Lancium."  Dkt. 1 ¶ 23; Dkt. 1-2.  Prior to OBM removing certain functionality from its Foreman software, OBM and Lancium were directly competing.

### B.   The Court Should Use Its Discretion to Hear OBM's Declaratory Judgment Action and Deny Lancium's Motion to Dismiss.

While a court has discretion under the Declaratory Judgment Act to decline jurisdiction, the "purpose of the Declaratory Judgment Act in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights."  *Micron Tech.*, 518 F.3d at 902 (citing *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed. Cir. 1987)).  A district court, when deciding whether to exercise its discretion, should decide whether hearing the case would "serve the objectives for which the Declaratory Judgment Act was created."  *Capo, Inc. v. Dioptics Med. Prods., Inc.*, 387 F.3d 1352, 1355 (Fed. Cir. 2004) (quotations and citations omitted).  "When there is an actual controversy and a declaratory judgment would settle the legal relations in dispute and afford relief from uncertainty or insecurity, in the usual circumstance the declaratory judgment is not subject to dismissal."  *SanDisk,* 480 F.3d at 1383 (quoting *Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993)).  Here, the parties have had nearly two years to come to an agreement on a business partnership without success.  During that time, Lancium accused OBM and its customers of infringement of the '433 Patent.  In response, OBM disabled certain functionality of software under threat of a lawsuit.  When disabled, OBM was no longer able to assist its clients with becoming CLR compliant.  Lawrence Decl. ¶¶ 21-22.  There is no reason to further delay and this matter is ripe for decision.

Lancium's attorney argument regarding alleged "use of litigation for PR purposes," Dkt. 17 at 25, is a red herring (and ironic in view of Lancium's press release announcing its intention to aggressively assert its IP).  Lancium, nevertheless, cites no authority supporting dismissal of a declaratory judgment complaint simply because the declaratory judgment plaintiff issued a press release for its customers and the public.

## VII.     CONCLUSION

OBM respectfully requests that Lancium's Motion to Dismiss be denied.


Dated: June 30, 2023                                    Respectfully submitted,

                                                       Womble Bond Dickinson (US) LLP

                                                       By:  */s/ Rodney R. Miller*
                                                       Rodney R. Miller
                                                       Texas Bar No.: 24070280
                                                       271 17th Street, NW, Suite 2400
                                                       Atlanta, GA 30363
                                                       Telephone: (404) 888-7366
                                                       Email: rodney.miller@wbd-us.com

                                                       *Attorney-in-Charge for Plaintiff OBM, Inc.*

Of Counsel:

Womble Bond Dickinson (US) LLP
Preston H. Heard (*pro hac vice*)
Georgia Bar No. 476319
Atlanta, GA 30363
Telephone: (404) 888-7366
Email: Preston.Heard@wbd-us.com

Womble Bond Dickinson (US) LLP
Andrew Beverina (*pro hac vice*)
DC Bar No.: 464897
2001 K Street, NW, Suite 400 South
Washington, DC 20006
Telephone: (202) 857-4411
Email: Andrew.beverina@wbd-us.com

Womble Bond Dickinson (US) LLP
James Dority (*pro hac vice*)
South Carolina Bar No.: 104627
550 South Main Street, Suite 400
Greenville, SC 29601
Telephone: (864) 255-5412
Email: james.dority@wbd-us.com

*Attorneys for Plaintiff OBM, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 30, 2023, I electronically filed under seal the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing via electronic mail to all counsel of record.


*/s/ Rodney R. Miller*
Rodney R. Miller