# EXHIBIT 3

| | |
|---|---|
| **From:** | brandon.greenfield@lancium.com |
| **Sent:** | Thursday, September 29, 2022 4:40 PM |
| **To:** | 'Daniel Lawrence'; 'Jacob Luers' |
| **Cc:** | dan.summers@lancium.com; 'Leo Owens'; 'Ian Rock' |
| **Subject:** | RE: Foreman | Lancium |
| **Attachments:** | OBM Inc - Form NDA - Mutual (LanciumRedlines9.29.22).docx |

Hello Danial and Jacob,

    Our legal team has reviewed the NDA and has made some suggested redlines. Please see the attached document and let me know if this works for you and your team.

Regards,

Brandon Greenfield

---

**From:** brandon.greenfield@lancium.com <brandon.greenfield@lancium.com>
**Sent:** Thursday, September 29, 2022 12:00 PM
**To:** 'Daniel Lawrence' <dan@obm.mn>
**Cc:** 'Jacob Luers' <jake@obm.mn>
**Subject:** RE: Foreman | Lancium

No worries Dan, I know sometimes it is tough just to keep up with everything. Thank you for sending over the NDA, I will have my team look it over and send it back to ensure we agree before signing.

Nice to meet you Jacob! Looking forward to chatting sometime soon.

Regards,

Brandon Greenfield

---

**From:** Daniel Lawrence <dan@obm.mn>
**Sent:** Thursday, September 29, 2022 11:56 AM
**To:** Brandon Greenfield <brandon.greenfield@lancium.com>
**Cc:** Jacob Luers <jake@obm.mn>
**Subject:** Foreman | Lancium

Hey Brandon,

I hope that all is well with you!  Deepest apologies for our email chain fizzling.  We've been roped into a few site deployments over the last couple of weeks, so I'm a bit behind on things.

I'm adding Jake to the chain today.  He's my CTO, co-founder, and a great guy to help fill in some of the communication gaps.

I'm unable to make our meeting today due to a flight that got shifted around on me.  To help get things moving, though, I've attached our standard MNDA for your review.  We require one of these before we're able to share our SOC report.

Thanks so much for your patience.  Sorry again for the gaps.

Thanks,
Dan

--
Daniel Lawrence
CEO
Schedule a Meeting
Foreman.mn - OBM, Inc.
1 N Haven Street, Suite 3
Baltimore, MD 21224

**CONFIDENTIALITY NOTICE:** The information in this email may be confidential and/or privileged. This email is intended to be reviewed by only the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this email and its attachments, if any, or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by return email and delete this email from your system.

## NON-DISCLOSURE AGREEMENT

This **NON-DISCLOSURE AGREEMENT** (this "Agreement") is made and entered into as of _____, between OBM, Inc, a Delaware corporation ("OBM"), and the undersigned (the "Client").  OBM and the Client are hereinafter referred to individually as a "Party" and collectively as the "Parties".

Explanatory Statements

OBM and the Client are currently in preliminary discussions with respect to a potential business transaction or arrangement (the "Potential Transaction").  In connection with those discussions regarding the Potential Transaction, OBM may furnish to the Client, or the Client's officers, directors, members, affiliates, ~~stockholders~~, employees, or agents~~, or other persons acting on their behalf~~ (each, a "Representative" and collectively, the "Representatives") certain information concerning the business, affairs, and operations of OBM or OBM's clients that is non-public, confidential, and proprietary.  The Client may also furnish to OBM and OBM's Representatives certain information concerning the business, affairs, and operations of the Client or the Client's clients that is non-public, confidential, and proprietary.  The Parties desire to protect and prohibit the disclosure of such Confidential Information (as defined below) as set forth in this Agreement.  Whenever a Party is disclosing Confidential Information, it is the "Disclosing Party," and whenever a Party is the recipient of Confidential Information, it is the "Recipient."

Agreement

NOW, THEREFORE, in consideration of the premises, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby covenant and agree as follows:

1. Explanatory Statements.  The Explanatory Statements to this Agreement shall constitute an integral part of this Agreement and are incorporated herein as if set forth in the body hereof.

2. Confidential Information.  As used in this Agreement, the term "Confidential Information" shall mean all oral or written confidential or proprietary information of the Disclosing Party disclosed to the Recipient or its Representatives, whether marked as "confidential" or not, and including, but not limited to: (a) all financial, customer, client, vendor, supplier, employee or other business or personal information; (b) information relating to trade secrets, trademarks, service marks, patents or copyrights, or any applications therefore, of the Disclosing Party or any vendor, supplier, service provider, customer, client, independent representative or consultant of Disclosing Party; (c) information relating to existing or contemplated products, services, technology, processes, manuals, computer systems and/or software of the Disclosing Party or any vendor, supplier, customer or client of the Disclosing Party; (d) information relating to business plans, sales or marketing methods, methods of doing business, customer lists and information, customer and client usages and/or requirements, and vendor, supplier, customer or client information of the Disclosing Party or any vendor, supplier, customer or client of the Disclosing Party; (e) the existence of this Agreement or the discussions or

negotiations that are currently taking place or have taken place concerning the Potential Transaction, including the proposed terms and conditions of the Potential Transaction, the status of such discussions or negotiations, or the identity of any of the Parties; and (f) ~~any other information whatsoever disclosed or made available by the Disclosing Party or its Representatives to the Recipient or its Representatives; and (g)~~ all copies and reproductions of any of the foregoing. All information which is orally or visually disclosed to the Recipient or its Representatives by the Disclosing Party or its Representatives shall in all cases also constitute Confidential Information. Confidential Information shall also include all analyses, compilations, notes, studies or other documents disclosed to or prepared by or on behalf of the Recipient or its Representatives to the extent they contain, reflect or are based upon or derived from any such Confidential Information. The definition of Confidential Information shall not include any information that: (w) ~~was,~~ is~~,~~ or becomes generally available to the public, other than as a result of a disclosure by the Recipient or its Representatives; (x) ~~was,~~ is~~,~~ or becomes available to the Recipient or its Representatives on a non-confidential basis from a source other than the Disclosing Party or its Representatives; *provided* that such source is not bound by a confidentiality agreement with the Disclosing Party; (y) ~~was,~~ is~~,~~ or becomes required to be disclosed by applicable law (subject to the provisions of **Section 4**); or (z) is at any time developed by the Recipient or its Representatives independently of any Confidential Information, as evidenced by documentation ~~reasonably satisfactory to the Disclosing Party~~.

3. <u>Non-Disclosure and Non-Use of Confidential Information</u>. The Recipient agrees that the Recipient shall, and shall cause its Representatives to, (a) not disclose the Confidential Information to anyone other than to such of Recipient's Representatives who may need to know or review the Confidential Information for purposes of evaluating the Potential Transaction; (b) not use the Confidential Information for any purpose other than to evaluate the Potential Transaction; and (c) promptly notify the Disclosing Party upon discovery of any unauthorized use or disclosure of the Confidential Information and take reasonable steps to regain possession of such Confidential Information and prevent further breach of this Agreement. The Recipient shall be responsible for any breach of this Agreement by any of the Recipient's Representatives.

4. <u>Mandatory Disclosure</u>. In the event that the Recipient or any of its Representatives becomes legally compelled (by oral questions, interrogatories, requests for information or documents, subpoena, civil investigative demand, or similar process) to disclose any of the Confidential Information, the Recipient shall provide the Disclosing Party<u>, prior to disclosure,</u> with written notice thereof so that the Disclosing Party may seek a protective order or other appropriate remedy or waive compliance with the provisions of this Agreement. The Recipient agrees to cooperate with the Disclosing Party <u>(at Disclosing Party's expense)</u> in securing any such protective order or other similar remedy. In the event that such protective order or other remedy is not obtained, or that the Disclosing Party waives compliance with the provisions of this Agreement, the Recipient and its Representatives, as appropriate, shall furnish<u>, based upon the advice of counsel,</u> only that portion of the Confidential Information that is legally required to be disclosed.

5. <u>Ownership of Confidential Information</u>. All Confidential Information shall remain the property of the Disclosing Party and the Recipient and its Representatives shall not acquire any right or license, express or implied, with respect to any Confidential Information.

6. <u>Representations or Warranties Regarding Confidential Information</u>.  The Recipient hereby acknowledges and agrees that neither the Disclosing Party nor any of its Representatives (i) makes any representation or warranty concerning the accuracy or completeness of the Confidential Information or (ii) shall have any liability to the Recipient as a result of the use of the Confidential Information by the Recipient or its Representatives~~, except as may arise pursuant to a definitive agreement between the Parties, when, as, and if executed, and subject to such limitations and restrictions as may be specified in such definitive agreement; *provided*, *however*, that, notwithstanding the anything else in this Agreement to the contrary, the Disclosing Party hereby represents, warrants, covenants, and agrees that it has not disclosed, and shall not at any time disclose, to the Recipient any Confidential Information of any other person, the disclosure of which to the Recipient would be a breach or violation of any agreement between the Disclosing Party any other person, would be prohibited by law, or would otherwise subject the Recipient to any liability or obligation of any kind whatsoever other than the obligations of confidentiality set forth in this Agreement~~.

7. <u>Return of Confidential Information</u>.  In the event that the Parties elect not to proceed with the Potential Transaction, the Disclosing Party may request in writing that the Recipient and its Representatives return or destroy the Confidential Information.  As soon as reasonably practicable following such written request, the Recipient and its Representatives will either return all Confidential Information to the Disclosing Party or destroy all Confidential Information, without retaining any copies thereof.  <ins>Notwithstanding the foregoing, Recipient shall be permitted to retain an electronic copy of any Confidential Information in compliance with any bona fide, preexisting records retention policy solely for archival purposes or as required by law. Any Confidential Information that is not so returned shall remain subject to the confidentiality and other obligations set forth in this Agreement.</ins>

8. ~~<u>Non-Solicitation</u>.  For a period of three years from the date of this Agreement, neither Party shall, other than with the prior written consent of the other Party, solicit, encourage, or induce to leave such Party's employment any employee of the other Party.  The foregoing restriction shall not apply to any solicitation, encouragement, inducement, or hiring of any individual who has responded or may respond to general media advertisements or solicitations or non-directed search inquiries.~~

9. <u>Term and Termination</u>.  This Agreement and all obligations hereunder shall be effective as of the date first written above and shall automatically terminate on the ~~fifth~~ <ins>third</ins> anniversary of such date.

10. <u>No Obligation to Close the Potential Transaction</u>.  Nothing in this Agreement shall be construed to create a binding obligation on any Party to consummate the Potential Transaction.  ~~The Parties will only become legally obligated to proceed with the Potential Transaction in accordance with the terms and conditions of a definitive agreement that the Parties may enter into following the date of this Agreement~~.

11. <u>Entire Agreement</u>.  This Agreement contains the entire, complete, and integrated

agreement between the Parties with respect to the subject matter hereof, and supersedes any prior or contemporaneous understandings, agreements or representations by or between the Parties, written or oral, express or implied, which may have related to the subject matter hereof in any way.

       12.     <u>Assignment</u>.  This Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns, except that neither this Agreement nor any of the rights, interests or obligations hereunder may be assigned by any Party without the prior written consent of the other Parties hereto.

       13.     <u>Amendments</u>.  This Agreement may be amended, modified, and supplemented only by written agreement among the Parties which states that it is intended to be a modification of this Agreement.

       14.     <u>Severability</u>.  Whenever possible, each provision of this Agreement will be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision will be deemed severable and ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

       15.     <u>Remedies</u>.  The Parties agree that irreparable damage would occur in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms.  It is accordingly agreed that the Parties shall be entitled to preliminary and/or permanent injunction, specific performance of the terms hereof, or other equitable relief, without prejudice to any other rights and remedies that the Parties may have for a breach of this Agreement at law or in equity.

       16.     <u>Governing Law; Jurisdiction; Venue</u>.  All questions concerning the construction, validity, and interpretation of this Agreement and the performance of the obligations imposed by this Agreement will be governed by the laws of the State of ~~Maryland~~ <u>Delaware</u> without reference to any conflict of laws rules.  The Parties hereby (i) agree and consent to (and waive any challenge or objection to) personal jurisdiction in the State of <u>Delaware</u>~~Maryland~~, (ii) agree that any action or proceeding arising out of or brought to enforce the provisions of this Agreement may be brought in any Federal or state court in the State of <u>Delaware</u>~~Maryland~~, and irrevocably consent to the jurisdiction of each such court, (iii) agree to file such litigation or lawsuit only in such courts.

       17.     <u>Notices</u>.  All notices and other communications hereunder shall be in writing and shall be deemed duly given (a) on the date of delivery if delivered personally, or by telecopy or telefacsimile, upon confirmation of receipt, (b) on the first business day following the date of dispatch if delivered by a nationally recognized next-day courier service, or (c) on the third business day following the date of mailing if delivered by registered or certified U.S. mail, return receipt requested, postage prepaid.  All notices or other communications required or permitted hereunder shall be given to the Parties at their respective addresses as follows:

       If to OBM:                  OBM, Inc.
                                          P.O. Box 50133

Baltimore, Maryland 21211<br>
Attention:  Daniel Lawrence

If to the Client, to the address set forth under his, her or its name on the signature page of this Agreement.

18. <u>Voluntary Agreement</u>.  By voluntarily executing this Agreement, the Parties confirm that they have had the opportunity to have this Agreement explained to them by their attorneys, and, in voluntarily executing this Agreement, the Parties rely upon their own judgment and the advice of their attorneys.  By voluntarily executing this Agreement, the Parties confirm their competence to understand this Agreement and hereby accept the terms of this Agreement.  Accordingly, any rule of law or any legal decision that would require interpretation of any claimed ambiguities in this Agreement against the party that drafted it has no application and any such right is expressly waived.

19. <u>Counterparts</u>.  This Agreement may be executed simultaneously in multiple counterparts, each of which will be deemed to be an original copy of this Agreement and all of which together will be deemed to constitute one and the same agreement.  The exchange of copies of this Agreement and of signature pages by facsimile (or .pdf) transmission shall constitute effective execution and delivery of this Agreement as to the Parties and may be used in lieu of the original Agreement and signature pages thereof for all purposes.

*{Signatures appear on the following page}*

IN WITNESS WHEREOF, each of the Parties hereto has executed this Agreement as of the day and year first above written.

**OBM, INC**

By:_____

Name: Daniel Lawrence

Title: CEO


Lancium LLC


By:_____

Name:_____

Title:_____

Address:   9950 Woodloch Forest Drive, Suite 1600, The Woodlands, Texas 77380