IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OBM, INC., | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 4:23-cv-01798 |
| v. | § § | JURY TRIAL DEMANDED |
| LANCIUM LLC, | § § § | |
| Defendant. | § § | |

**DEFENDANT LANCIUM LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF SUBJECT MATTER/DECLARATORY <u>JUDGMENT JURISDICTION</u>**

## TABLE OF CONTENTS

I.   **OBM CANNOT AND DOES NOT EXPLAIN WHY THE FACTS OF THIS CASE OBJECTIVELY SUPPORT DJ JURISDICTION**...............................................1

    A.   Lancium's Letter Does Not Support Jurisdiction, Alone or in Combination ......... 2

    B.   Lancium's Actual Conversations with OBM Do Not Support DJ Jurisdiction ................................................................................................................ 3

    C.   Lancium's Purported Statements to Others Do Not Support DJ Jurisdiction......... 4

    D.   Lancium's Litigation History Does Not Support DJ Jurisdiction........................... 5

II.  **THE CONTEMPORANEOUS EVIDENCE HERE CANNOT SUPPORT AN OBJECTIVELY REASONABLE BASIS FOR JURISDICTION** ...............................7

    A.   OBM, Not Lancium, Was the Cause of Any Delay................................................ 7

    B.   OBM Assured Lancium That it Was Not Using – and Had No Desire to Use – the Technology of Lancium's '433 Patent, But Now Argues the Exact Opposite .................................................................................................................. 7

    C.   Mr. Greenfield's Access to Foreman Software is Unrelated and Irrelevant........... 8

    D.   OBM's "Fruitless" Argument Ignores that The Parties Were Not Discussing Any License Agreement or Settlement Agreement ................................................ 8

III. **ALTERNATIVELY, JURISDICTION SHOULD BE DENIED ON DISCRETIONARY GROUNDS**......................................................................................9

IV.  **CONCLUSION AND PRAYER FOR RELIEF**............................................................10

**Table of Authorities**

Page(s)

**Cases**

*ABB Inc. v. Cooper Indus., LLC.*,
   635 F.3d 1345 (Fed. Cir. 2011)..................................................................................................2

*Allied Min. Prod., Inc. v. Osmi, Inc.*,
   870 F.3d 1337 (Fed. Cir. 2017)...............................................................................................3, 5

*Arkema Inc. v. Honeywell Int'l, Inc.*,
   706 F.3d 1351 (Fed. Cir. 2013)..................................................................................................2

*Arris Grp., Inc. v. British Telecomms. PLC*,
   639 F.3d 1368 (Fed. Cir. 2011)..................................................................................................9

*BearBox LLC v. Lancium LLC*,
   No. 1:21-cv-00534-GBW-CJB, Dkt. 1 (D. Del. Apr. 14, 2021)................................................6

*Bridgelux, Inc. v. Cree, Inc.*,
   No. C 06-6495 PJH, 2007 WL 2022024 (N.D. Cal. July 9, 2007) ........................................4, 6

*Commc'ns Test Design, Inc. v. Contec LLC*,
   367 F. Supp. 3d 350 (E.D. Pa. 2019), *aff'd* 952 F.3d 1356 (Fed. Cir. 2020)..........................10

*Commc'ns Test Design, Inc. v. Contec LLC*
   952 F.3d 1356 (Fed. Cir. 2020)................................................................................................10

*Danisco U.S. Inc. v. Novozymes A/S*,
   744 F.3d 1325 (Fed. Cir. 2014)..............................................................................................8, 9

*Element Six U.S. Corp. v. Novatek Inc.*,
   CV 14-0071, 2014 WL 12586395 (S.D. Tex. June 9, 2014) .................................................2, 3

*Harman Int'l Indus. v. Massachusetts Inst. Of Tech.*,
   No. 1:05-cv-01481 (N.D. Ill. Aug. 15, 2003), Dkt. 23 ............................................................10

*Haskell Office LLC v. MooreCo, Inc.*,
   No. 21-02533, 2022 WL 1592572 (E.D. Pa. May 19, 2022).....................................................6

*Hewlett Packard v Acceleron*,
   587 F.3d 1358 (Fed. Cir. 2009)..................................................................................................3

*Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*,
   599 F.3d 1377 (Fed. Cir. 2010).........................................................................................1, 5, 10

*Lancium LLC v. US Data Mining Group, Inc. d/b/a US Bitcoin et al.*,
   6:23-cv-00344-KC (W.D. Tex. 2023), Dkt. 1............................................................................5

*Magpul Indus., Corp. v. Blue Force Gear, Inc.*,
   No. 4:14-CV-277, 2018 WL 11413885 (S.D. Ga. Nov. 16, 2018) ...........................................5

*Micron Tech., Inc. v. Mosaid Techs., Inc.*,
   518 F.3d 897 (Fed. Cir. 2008)...............................................................................................6

*Microsoft Corp. v. DataTern, Inc.*,
   755 F.3d 899, 110 U.S.P.Q.2d 1561 (Fed. Cir. 2014) ............................................................5

*Microsoft Corp. v. SynKloud Techs., LLC*,
   484 F. Supp. 3d 171 (D. Del. 2020)........................................................................................2

*PharmaNet, Inc. v. DataSci Liab. Co.*,
   No. 3:08-cv-02965-GEB-DEA, 2009 WL 396180 (D.N.J. Feb. 17, 2009)..........................6, 7

*In re Qualcomm Litigation*,
   2017 WL 5985598 (S.D. Cal. 2017) .......................................................................................1

*Shell Oil Co. v. Amoco Corp.*,
   970 F.2d 885 (Fed. Cir. 1992)................................................................................................3

*Vietnam Land v. Tran*,
   No. H-14-957, 2016 WL 1085101 (S.D. Tex. Feb. 18, 2016)..................................................2

**Statutes**

Declaratory Judgment Act ................................................................................................3, 10

Lancium does not seek any exception to, or new interpretation of, the requirements for subject matter jurisdiction. The rule is already an objective standard, and based on the actual, admissible, contemporaneous evidence in this case, OBM's position does not reasonably and objectively meet the standard under the totality of the circumstances. It is telling that OBM wants to disregard its contemporaneous statements in blanket fashion as "irrelevant" and instead focus on unsupported attorney argument. OBM does not, nor can it, explain the record evidence in a way consistent with its current, litigation-inspired, attorney narrative. OBM's contemporaneous statements are flatly relevant both to the objective test, as well as to discretionary denial.

Lancium does not contend that OBM must "become belligerent or cower in fear" in order to establish DJ jurisdiction. Dkt. 20 ("Opp.") at 20, n.3. Rather, extensive case law supports precluding jurisdiction in the face of documented evidence of a DJ plaintiff continuing to lead a potential partner down the "primrose path" of a lucrative collaboration while preparing to file a DJ complaint. OBM, not Lancium, was acting duplicitous. OBM's actions were objectively **un**reasonable and support discretionary denial. OBM's Complaint should be dismissed.

## I. OBM CANNOT AND DOES NOT EXPLAIN WHY THE FACTS OF THIS CASE OBJECTIVELY SUPPORT DJ JURISDICTION

OBM criticizes Lancium for purportedly evaluating categorical activities separately rather than as a totality of circumstances. Opp. at 1, 13. Yet, Lancium does address the totality of the circumstances and *also* necessarily illustrates how the case law rejects reliance on *stronger* facts in each category. The case law shows that even where there are combinations of factors, jurisdiction is not found where the specific evidence is insufficient. *See, e.g.*, *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1382 (Fed. Cir. 2010) (dismissal despite prior litigation combined with statements that patentee would sue if plaintiff sold a certain device); *In re Qualcomm Litigation*, 2017 WL 5985598, **15-19 (S.D. Cal. 2017) (dismissal despite licensing

1

communications plus prior litigation against others); *Microsoft Corp. v. SynKloud Techs., LLC*, 484 F. Supp. 3d 171, 183 (D. Del. 2020) (licensing negotiations and litigation against Microsoft's competitors insufficient); *Element Six U.S. Corp. v. Novatek Inc.*, CV 14-0071, 2014 WL 12586395, at **4-5 (S.D. Tex. June 9, 2014) (dismissal despite alleged threatening communications and distinguishing cases with offers to license, detailed infringement analysis, imposed deadlines, and litigation). Under the totality of circumstances, Lancium's actions do not compare to the activities in OBM's cited authority because Lancium sought a business partnership and never (1) demanded anything, (2) set any deadlines, and (3) warned of a potential suit. OBM's authority involves significantly more aggressive, more threatening, and more explicit assertions.

### A.     Lancium's Letter Does Not Support Jurisdiction, Alone or in Combination

OBM ignores the five key distinctions presented in Lancium's brief about the actual content of its letter. Dkt. 17 ("Mot.") at 16-17. As OBM offers no argument to rebut Lancium's arguments, the conclusions remain unrebutted and support the lack of any actual controversy. *See*, *e.g.*, *Vietnam Land v. Tran*, No. H-14-957, 2016 WL 1085101, at *4-5 (S.D. Tex. Feb. 18, 2016). OBM does argue that a letter plus "more" can support DJ jurisdiction (Opp. at 19), but fails to address how Lancium's letter differs significantly from letters supporting DJ jurisdiction.[1] OBM relies on *ABB Inc. v. Cooper Indus., LLC.*, 635 F.3d 1345, 1357 (Fed. Cir. 2011), Opp. at 11, where a letter stated that the plaintiffs had no rights under a license and an intent to "vigorously" enforce a patent. *ABB Inc.*, 635 F.3d at 1348-49. Lancium made no such statements. Mot. at 7. OBM also relies on *Arkema Inc. v. Honeywell Int'l, Inc.*, 706 F.3d 1351, 1357 (Fed. Cir. 2013). Opp. at 19. *Arkema*, however, involved the patentee accusing the plaintiff of infringing a related patent in prior litigation and the patentee refusing to sign a covenant not to sue. *Id.* at 1354-55, 1358.

---

[1] As discussed throughout Lancium's motion and this reply, the rest of the parties' interactions did not supply anything "more" to convert a non-threatening letter into jurisdiction.

2

OBM claims a "specific threat is not required for declaratory judgment jurisdiction" (Opp. at 19), relying on *Hewlett Packard v Acceleron*, 587 F.3d 1358, 1363 (Fed. Cir. 2009). However, this was not a blanket allowance for jurisdiction, and was grounded in specific facts not present here, including a non-practicing entity that benefits through enforcement actions and an insistence to respond to licensing demands within two weeks. *Id*. at 1363-64. OBM argues that almost *any* letter plus "more" confers jurisdiction, but courts reject this proposition. Patentees send letters for multiple, non-litigation purposes, such as to bring awareness of their inventions and to allow others to otherwise respect the IP. *See, e.g., Element Six*, 2014 WL 12586395, at **4-5 (letter only had patent related information). Here, Lancium encouraged OBM to partner for mutual benefit while advising OBM of existing IP.[2] Objectively, OBM's "letter-plus-more" argument is misplaced.

**B.     Lancium's Actual Conversations with OBM Do Not Support DJ Jurisdiction**

Lancium never stated or alleged that OBM itself or its customers could be – much less were – infringing any patent. No contemporaneous evidence supports any such statement, OBM provides no corroborating evidence, and Lancium unequivocally denies any such threat. Rock Decl. ¶¶ 6-7, ¶ 8; Cline Decl. ¶ 4; Second Declaration of Ian Rock ("2nd Rock Decl.") ¶ 3.

Tellingly, OBM attempts to now portray the November 17, 2022 meeting as some important change in the parties' relationship. It was not. OBM alleged that Lancium orally "stated to OBM that use of Foreman **could** be infringing one or more of Lancium's patents." Dkt 1 ¶ 22. OBM now goes further in its brief, without corroboration, that the threat was specific as to (still

---

[2] OBM also points to its purported, unilateral decision to pause certain functionality (Opp. at 17), but this ignores the contents of the letter. *See Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 889 (Fed. Cir. 1992) ("[t]he Declaratory Judgment Act was intended to protect threatened parties, not to drag a non-threatening patentee into court."); *see also Allied Min. Prod., Inc. v. Osmi, Inc.*, 870 F.3d 1337, 1340 (Fed. Cir. 2017) (fear of future lost business because of infringement threats against a customer was, by itself, insufficient to create standing for the manufacturer.)

3

unnamed) customers. Opp. at 5. OBM's lawyer arguments go even further by eliminating the word "could" and arguing "Lancium (1) accused OBM's customers of infringing its patents." Opp. at 1. OBM now alleges that "Mr. Lawrence was immediately concerned and felt threatened" and "after Mr. Rock's threat, Mr. Lawrence was, understandably, concerned about being sued." Opp. at 5.

In fact, no such threat of any kind was made. Rock Decl. ¶ 8; Cline Decl. ¶ 4; 2nd Rock Decl. ¶ 3. Mr. Lawrence's contemporaneous emails express no such concern and instead reflect a non-threatening meeting about normal business discussions. After that meeting, Lancium immediately followed-up to continue the business discussions. Ex. 1. Mr. Lawrence then texted Lancium apologizing for his delay due to "family stuff since Thanksgiving," 2nd Rock. Decl. ¶ 4; Ex. 19, and then emailed a month later, again apologizing for his delay:

> We are very comfortable exploring with you the basics of a potential business partnership without [an NDA]. … Once we sense we're seeing customers, products and market opportunities the same way, then it makes total sense to enter into an NDA with strong mutual protections. … Thanks so much for the patience

Ex. 4. This contemporaneous, written evidence objectively supports that OBM was not, in fact, concerned about any non-existent threat or accusation.

**C.** **Lancium's Purported Statements to Others Do Not Support DJ Jurisdiction**

OBM references purported Lancium "threats" to unnamed companies. *See, e.g.*, Opp. at 17-18; Dkt. 1 ¶ 20. Yet, OBM does not identify these companies or provide any supporting evidence. It relies only on inadmissible hearsay in a self-interested statement by the CEO: "I am also aware that Lancium has aggressively approached others in the industry, asking them to license the '433 Patent and other Lancium patents." Dkt. 20-2 ¶ 30. Hearsay "cannot be admitted into evidence to support [OBM's] claim that an 'actual controversy' existed." *Bridgelux, Inc. v. Cree, Inc.*, No. C 06-6495 PJH, 2007 WL 2022024, at *9 (N.D. Cal. July 9, 2007) (granting motion to dismiss). Further, this could be Layer1 and US Bitcoin, which, as discussed below, are very

4

differently situated than OBM. OBM had a chance to support these allegations and chose not to.

D.    **Lancium's Litigation History Does Not Support DJ Jurisdiction**

Lancium's two prior suits against bitcoin miners do not support jurisdiction. OBM does not address the key distinctions and case law identified in Lancium's prior brief, but instead relies on a *defensive* statement made by Lancium when *Lancium* was sued. This fails to support a finding of jurisdiction. *Innovative*, 599 F.3d at 1382; *Allied Min. Prod., Inc.*, 870 F.3d at 1340.

Lancium identified clear case law recognizing that where a DJ defendant's relationship with the plaintiff is distinguishable from that with parties it has sued, this weakens any relevance of those other cases. Lancium then detailed how letters, course of interaction, and the parties' business, differ in key ways in this case. Mot. at 21-23, *citing Magpul Indus., Corp. v. Blue Force Gear, Inc.*, No. 4:14-CV-277, 2018 WL 11413885, at *10 (S.D. Ga. Nov. 16, 2018); *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 903-07, 110 U.S.P.Q.2d 1561 (Fed. Cir. 2014). OBM's only engagement with this argument is to claim (without explanation) that Lancium and OBM are "direct competitors." Opp. at 24. In actuality, the parties' business is *complementary*. Lancium offers power management/CLR software and OBM offers miner management software.[3] OBM had significant value to Lancium as a software partner, whereas Layer1 and US Bitcoin did not.[4]

Lancium also detailed how the present case is like *Innovative*, where prior litigation history did not confer jurisdiction in view of defendant's lack of threats against the DJ plaintiff. Mot. at 21, *citing Innovative*, 599 F.3d at 1381-1382. In response, OBM claims Lancium has made

---

[3] Even if OBM recently started to develop CLR functionality, by OBM's own narrative this started long *after* Lancium reached out in 2021, making clear its intent of a business partnership. And, OBM discusses testing of its software with purported customers it will not even disclose—far from a directly competitive commercial product.

[4] In its Opposition, OBM suggests that Lancium sued multiple companies in the *US Bitcoin* case. Opp. at 8-9. To be clear, Lancium only sued US Bitcoin and two of its subsidiaries, subject to the same single notice letter. *Lancium LLC v. US Data Mining Group, Inc. d/b/a US Bitcoin et al.*, 6:23-cv-00344-KC (W.D. Tex. 2023), Dkt. 1 ¶¶ 1-5.

"affirmative acts directed towards OBM," identifying litigation against others and "multiple threats about how OBM's Foreman software may infringe the '433 Patent." Lancium's litigation against others is distinguishable from its interactions with OBM and the purported "threats" against OBM were either not made or statements that objectively cannot be viewed as such.

OBM also cites a Lancium press release stating it "intends to continue aggressively defending its intellectual property" as though it shows "intent to continue an aggressive litigation strategy." Opp. at 23. But, Lancium was the *defendant* in that *inventorship* case, placing critical context to its statement that it will continue "***defending*** its intellectual property." *BearBox LLC v. Lancium LLC*, No. 1:21-cv-00534-GBW-CJB, Dkt. 1 (D. Del. Apr. 14, 2021). If OBM truly viewed Lancium's statement that they would continue *fending off* attacks as a threat to attack others, this would be as unreasonable as interpreting Mr. McFarland's statement of wanting to avoid litigation as a desire to launch it. Unreasonable interpretations do not support jurisdiction. *See Haskell Office LLC v. MooreCo, Inc.*, No. 21-02533, 2022 WL 1592572, at **4-6 (E.D. Pa. May 19, 2022); *see also, e.g.*, *Bridgelux, Inc. v. Cree, Inc.*, No. C 06-6495 PJH, 2007 WL 2022024, at *9 (N.D. Cal. July 9, 2007) ("The fact that [defendant] stated publicly in press releases [] that it would defend its patents is unremarkable. The same could be said of many patent-holders.") OBM cites *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 902 (Fed. Cir. 2008), claiming in *Micron,* "the patentee never made any specific threats to the plaintiff." Opp. at 23. In actuality, Mosaid sent *three* "threatening letters" to Micron. *Micron*, 518 F.3d at 901. Mosaid's public statements were also readily distinguishable from Lancium's, as they stated an intent to force all manufacturers (including Micron) to license their patents (*id.* at 899), while Lancium merely stated an intent to defend itself if attacked.[5] In sum, the two prior suits against bitcoin miners differently

---

[5] OBM also cites *PharmaNet, Inc. v. DataSci Liab. Co.* Opp. at 23. Yet there, the patentee was a

6

situated from software provider OBM, and a defensive press release, do not support jurisdiction.

## II. THE CONTEMPORANEOUS EVIDENCE HERE CANNOT SUPPORT AN OBJECTIVELY REASONABLE BASIS FOR JURISDICTION

The lack of any objective, reasonable concern or apprehension by OBM is further shown by OBM's mischaracterization of the evidence and focus on irrelevant arguments.

### A. OBM, Not Lancium, Was the Cause of Any Delay

OBM's legal brief repeatedly asserts that Lancium "for months … refused to provide any business terms to OBM." Opp. at 1. *See also*, Opp. at 6, 7. But it was OBM's delay that sidelined the parties' discussions between late November 2022 into early 2023. Rock Decl. ¶¶ 6-7, 9-11; Declaration of Brandon Greenfield ("Greenfield Decl.") ¶ 6; Exs. 2-6, 19. Then, once Mr. Lawrence re-surfaced after the holidays, it was OBM's idea to ***not*** enter into a comprehensive NDA that would allow Lancium to communicate detailed, confidential business ideas with OBM, suggesting instead that the parties focus on learning about each other's views and goals ***without*** sharing any confidential information. Ex. 4 at 1-2 (Mr. Lawrence's Jan. 5, 2023, at 7:29 PM email). Once Lancium had gone through this process, at OBM's suggestion, and was preparing to lay out the details of the plan, there was no NDA in place to protect Lancium's business ideas, which further limited what Lancium could share. McFarland Decl. ¶ 10; Ex. 14. Contrary to OBM' litigation position, any delay in discussions was OBM's fault, and any concern of apprehension that OBM now claims in the face of such delay is objectively unreasonable.

### B. OBM Assured Lancium That it Was Not Using – and Had No Desire to Use – the Technology of Lancium's '433 Patent, But Now Argues the Exact Opposite

---

non-practicing entity, filed *five* lawsuits against similarly situated companies, expressly sought a license by a deadline, and announced "several new patent infringement lawsuits are on the horizon." *PharmaNet,* 2009 WL 396180 at **1, 8.

OBM's legal brief contradicts contemporaneous, written evidence by claiming that Lancium's acts left OBM with no choice but to "disable[] the CLR compliance functionality in its Foreman software." Opp. at 2. *See also id*. at 5, 8, 13, 16, 17. This is the exact opposite of what OBM told Lancium: "the Forman Software does not practice any claim of the '433 Patent" and "OBM has no interest in implementing the technology claimed in the '433 patent in its software offering." Dkt. 1-3 at 1, 2. If these statements in OBM's letter were factually correct and made in good faith, then there was no objectively reasonable basis to file a DJ suit 14 days later.

C.      **Mr. Greenfield's Access to Foreman Software is Unrelated and Irrelevant**

OBM also points to Mr. Greenfield's access to Foreman software. Opp. at 21-22. Mr. Greenfield's access was provided at a single, Lancium-owned facility, at which no CLR (or any power management functionality) was performed using OBM's Foreman software. Greenfield Decl. ¶¶ 3, 7-8. Mr. Greenfield's access to Foreman had nothing to do with CLR (or any power management) technology, IP research, or anything else relevant to this motion. *Id.* ¶¶ 1, 7-8. Mr. Greenfield had no access to Foreman source code or a host machine, and he has no understanding of what kinds of power management capability, if any, is present in Foreman. *Id.* ¶ 8.[6]

D.      **OBM's "Fruitless" Argument Ignores that The Parties Were Not Discussing Any License Agreement or Settlement Agreement**

The parties were in the midst of progressing business discussions at the time of suit. OBM argues it was nevertheless entitled to file suit because it unilaterally decided that "settlement is improbable" and further discussions were "fruitless," without ever communicating that. Opp. at 20-21. But OBM's case law is not on point. *Danisco* involved settlement of a "definite and concrete

---

[6] OBM also notes that Mr. Greenfield was included on some emails, but OBM never identifies any relevancy to this motion. Mr. Greenfield was engaged in a parallel conversation about Lancium's routine need to understand and audit the security of the OBM software used at Lancium's facility. Greenfield Decl. ¶¶ 4-6. That conversation is irrelevant, other than to show further cooperation and an existing business relationship between the parties.

8

patent dispute" where the parties had "plainly been at war over patents." *Danisco,* 744 F.3d at 1331-32. *Arris Grp.* involved failed licensing negotiations in the face of "direct and repetitive" infringement, licensing communications, and a 118-page infringement presentation. *Arris Grp., Inc.*, 639 F.3d at 1377-79. Here, OBM and Lancium were **_not_** discussing any settlement or license terms, but were instead discussing potential collaboration. If that effort stalled, the objectively-reasonable result would simply be no business agreement, not a race to the court house.

OBM's "fruitless" argument also seriously mischaracterizes the actual proposal being discussed and OBM's contemporaneous reaction to it. The proposal was arguably a windfall to OBM, with OBM keeping 100% of its increased revenue from expanded adoption of its Foreman miner management, while also gaining ***10% of Lancium's revenue from its more lucrative Lancium Smart Response® offering***. 2nd McFarland Decl. ¶ 7. The proposal was not exclusive and did not stop OBM from doing anything with whomever it wanted. *Id.* ¶¶ 8-9; 2nd McFarland Decl. ¶ 8; Ex. 20. The proposal called for OBM and Lancium to agree on who they would jointly approach, and the revenue split, which favored OBM, would only apply to those customers. *Id.* At the time, OBM expressed interest in this proposal. McFarland Decl. ¶ 8. To the extent OBM's current interpretation is genuine, it is misguided and objectively unreasonable.

### III.   ALTERNATIVELY, JURISDICTION SHOULD BE DENIED ON DISCRETIONARY GROUNDS

Lancium articulated two clear bases under which the court should grant a discretionary denial: first, OBM's frustration of ongoing business negotiations, and second, OBM's clear attempt to use the case to get customers. OBM fails to effectively rebut either.

First, Lancium cited clear case law denying jurisdiction on discretionary grounds where the plaintiff's suit frustrated ongoing, good faith negotiations by filing suit while still promising future conversations. Mot. at 23-25. OBM does not address these cases, instead merely citing cases

9

about the general purpose of the declaratory judgment act and stating the parties were in discussions for years and that OBM (purportedly) "disabled certain functionality." Opp. at 24. The case law establishes discretionary denials are proper where a DJ plaintiff leads a defendant on with empty promises of future negotiations. *Commc'ns Test Design, Inc. v. Contec LLC*, 367 F. Supp. 3d 350, 359 (E.D. Pa. 2019), *aff'd* 952 F.3d 1356 (Fed. Cir. 2020); *Innovative*, 599 F.3d at 1384; *Harman Int'l Indus. v. Massachusetts Inst. Of Tech.,* No. 1:05-cv-01481 (N.D. Ill. Aug. 15, 2003), Dkt. 23. Here, Mr. Lawrence's "Taylor Swift" emails the weekend before suit are particularly illustrative for their tone and promise of further deliverables and discussions. As the district court in *Innovative* reasoned (quoted by the Federal Circuit in its decision), "where (as here) a declaratory judgment plaintiff was not willing to make its concerns of record pre-suit, I am not convinced that the objectives of the Declaratory Judgment Act are being served by allowing such a plaintiff to plead uncertainty and delay." *Innovative*, 599 F.3d at 1384. OBM similarly expresses its purported concerns for the first time in its pleadings. Allowing the complaint to proceed rewards them for preempting discussions that could (and should) have occurred pre-suit.

Second, Lancium identified how OBM's express purpose in filing suit was not to defend itself from an impending threat, but arguably to be viewed as a champion to the industry (for commercial benefit). Mot. at 25. OBM does not provide any alternative explanation for its statements and does not address Lancium's arguments that the OBM press release reveals an improper purpose. "[T]he purpose of the Declaratory Judgment Act ... in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights," *Commc'ns Test Design v. Contec, LLC*, 952 F.3d 1356, 1362 (Fed. Cir. 2020), and discretionary denial is plainly appropriate where suits do not serve the Act's purposes.

## IV.    CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, the Court should grant defendant's motion to dismiss.

10

Respectfully submitted,

**BARNES & THORNBURG, LLP**

<u>By: /s/ Daniel A. Valenzuela</u>
Daniel A. Valenzuela (Texas Bar No. 24067918)
Attorney-in-Charge
Barnes & Thornburg LLP
2121 N. Pearl Street, Suite 700
Dallas, Texas 75201
Phone: (214) 258-4200
Fax: (214) 258-4199
dvalenzuela@btlaw.com

Craig Leavell
IL State Bar No. 6256260
Craig.Leavell@btlaw.com


Bruce Ratain
IL State Bar No. 6324542
Bruce.Ratain@btlaw.com
One N. Wacker Drive
Suite 4400
Chicago, Illinois 60606
Telephone: 312.357.1313
Facsimile: 312.759.5646

*ATTORNEYS FOR DEFENDANT LANCIUM LLC*

11

CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2023, I electronically filed **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF SUBJECT MATTER/DECLARATORY JUDGMENT JURISDICTION** with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following:

*Via ECF*
Rodney R. Miller
Preston H. Heard
Womble Bond Dickinson (US) LLP
271 17th Street, NW
Suite 2400
Atlanta, GA 30363
Rodney.miller@wbd-us.com

/s/ Daniel A. Valenzuela
Daniel A. Valenzuela