**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| OBM, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 4:23-cv-01798 |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| LANCIUM LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**APPENDIX TO DEFENDANT'S REPLY IN SUPPORT OF**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant, Lancium LLC, in support of its Motion to Dismiss Plaintiff's Complaint,

submits the following declarations, exhibits and non-published documents:

Second Declaration of Ian Rock ........................................................................................... 4

Second Declaration of Scott McFarland ............................................................................ 8

Declaration of Brandon Greenfield.................................................................................... 14

Exhibit 19: Text Message Communications ................................................................... 18

Exhibit 20: Annotated Lancium Partnership Slide (public and sealed versions)......................... 24

Exhibit 21: Electronic Communications ........................................................................ 26

Exhibit 22: Electronic Communications ........................................................................ 29

Exhibit 23: Electronic Communications ........................................................................ 33

Exhibit 24: Electronic Communications ........................................................................ 36

Exhibit 25: OBM SOC2 Report (filed under seal)........................................................ 39

Respectfully submitted,

**BARNES & THORNBURG, LLP**

*By: /s/ Daniel A. Valenzuela*
Daniel A. Valenzuela (Texas Bar No. 24067918)
Attorney-in-Charge
Barnes & Thornburg LLP
2121 N. Pearl Street, Suite 700
Dallas, Texas 75201
Phone: (214) 258-4200
Fax: (214) 258-4199
*dvalenzuela@btlaw.com*

Craig Leavell
IL State Bar No. 6256260
Craig.Leavell@btlaw.com

Bruce Ratain
IL State Bar No. 6324542
Bruce.Ratain@btlaw.com
One N. Wacker Drive
Suite 4400
Chicago, Illinois 60606
Telephone: 312.357.1313
Facsimile: 312.759.5646

*ATTORNEYS FOR DEFENDANT LANCIUM LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 7, 2023, I electronically filed **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT** with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following:

> <u>*Via ECF*</u>
> Rodney R. Miller
> Preston H. Heard
> Womble Bond Dickinson (US) LLP
> 271 17th Street, NW
> Suite 2400
> Atlanta, GA 30363
> Rodney.miller@wbd-us.com

*/s/ Daniel A. Valenzuela*
Daniel A. Valenzuela

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OBM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 4:23-cv-1798 |
| | ) | |
| LANCIUM LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## SECOND DECLARATION OF IAN ROCK IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

I, Ian Rock, hereby declare as follows:

1. I presented a first declaration in this case on June 7th, 2023.  I have reviewed OBM's response brief filed on June 30th, along with the declaration from Dan Lawrence.   In this declaration, I reply to certain points in those documents.

2.  In his declaration, Mr. Lawrence states that around the summer of 2022, Foreman began running "in a customer's Fort Stockton, Texas facility" and "this customer also works with Lancium."   This seems to confuse the relationship: as I stated in my first declaration, the Fort Stockton site is a Lancium Clean Campus, owned by Lancium.   Individual customers (like bitcoin miners) can locate there, and benefit from both operational management and power management, with power provided by clean energy co-located there.  Lancium contracts with a company to run the day to day operations for the entire site, and they use Foreman to do so.  The power management is done through Lancium Smart Response software, not

Foreman.  As I stated in my first declaration, Lancium requested OBM's SOC 2 report to make sure Lancium was running the Ft. Stockton site properly, not for any purpose related to our partnership discussions.

3.  In his declaration, Mr. Lawrence states that on our November 17th meeting, I told him "that customers using Foreman could be infringing on Lancium's patents."  I did not stay that, or anything like it.  As I stated in my first declaration, I did not even mention patents during this meeting.  Mr. Lawrence states that I said the two companies should talk because "because CLR and energy management was Lancium's specialty and OBM was 'undervaluing' energy management by offering it for a price lower than the price Lancium was offering it."  I do not recall saying this—if anything, this would be out of context, and relate to OBM's miner management price.  At the time, I did have an understanding that miner management software garnered a lower fee than our Lancium Smart Response did; I would have meant that by providing a package of miner management *and* power management with us—rather than *just* providing miner management on its own—OBM would get more value.  Mr. Lawrence says he "took this to mean that Lancium saw Foreman as a threat to its business."  He never said that to me.  I can say throughout my conversations with Mr. Lawrence, I did not see Foreman as a threat to our business, but as a potential business partner where both companies could make more money—that is why I kept trying to talk to him and explain what we were thinking.

- 2 -

4.  In addition to the emails I provided along with my first declaration, I also still have my text messages with Mr. Lawrence. I took screenshots of this text conversation. A true and correct copy of these screenshots is attached as Exhibit 19. As shown in the exhibit, first Mr. Lawrence texted me on November 18th, 2022 (giving me his number). We then exchanged messages on November 29th, 2022, and I texted him again to follow up on December 5th, 2022 (I did not get a response). We exchanged further messages on January 5th, 2023, and I texted him on February 2nd, 2023 to follow up (I again did not get a response). On April 4th, I texted him Michael McNamara's contact information.

5.  In his declaration, Mr. Lawrence said on March 8th, 2023, I "pulled [him] to the side, and said that we needed to have a chat." As I stated in my first declaration, I believe we spoke on March 9th, 2023, not March 8th. In any event, the way he writes it seems to be suggesting I was aggressive or threatening him. That is not true. I may have said something to the effect of us needing to talk again—but that would only have been because I had been trying since November 17th to have a follow-up conversation with him. After many emails and texts, I was glad to finally catch him. As I discuss in my first declaration, our conversation was friendly, and all about our proposed collaboration.

6.  Mr. Lawrence's declaration may be suggesting that my email to him on March 28th, 2023 was triggered by his appearance on a podcast that day. I do not recall if I even heard the podcast at that time. The reason I reached

- 3 -

out was to follow up from our meeting on March 9th, where Mr. Lawrence and I agreed to have a follow-up meeting when he was back in town, but I had not heard back from him for a few weeks.

7. Mr. Lawrence states that on April 4th, he and I had a short phone call, where I said Lancium "would send business terms soon." I do not recall saying that. As I state in my initial declaration, the purpose of my April 4th call with Dan was to get him to agree to talk with our CEO, Michael McNamara, and that was the next step, not sending terms. (This is why I shared Michael's contact with Dan on April 4th, so that he would recognize the number when the call came in).

8. I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge.

Executed on this 6th day of July, 2023.

Ian Rock

- 4 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OBM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 4:23-cv-1798 |
| | ) | |
| LANCIUM LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## SECOND DECLARATION OF SCOTT MCFARLAND IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

I, Scott McFarland, hereby declare as follows:

1. I submitted a previous declaration in this case on June 5th, 2023. I have reviewed the declaration of Dan Lawrence submitted by OBM on June 30th, 2023. Here, I respond to certain statements and characterizations in his declaration.

2. In his declaration, Dan discusses our April 26th call. That was our first introduction to one another, and I do not recall him saying or suggesting that Lancium was delaying. I had just joined Lancium on March 27, 2023, and while I had a longstanding background in sales, I was new to this industry, learning about CLR capability and miner management functionality for the first time. I also was not aware of whatever Dan might have shared with others at Lancium in his prior conversations. Without a strong understanding of Foreman's capability and go-to-market, I was not at the stage in this first call to offer partnership terms, as they likely would not be as well aligned as they could be for both of us and our possible

customers. When proposing a business deal, my goal is for the terms to be both well-received and also not out of proportion to the recipient's existing relationships and financials. To do that, in the April 26th call, I wanted to get more information about OBM's current relationships and business. However, Dan did not provide that, giving only basic information, stating he was "interested in what we were thinking" and that "he wanted to see numbers." This made it more difficult for me to craft and provide appropriate terms.

3. As I discuss in my first declaration, after talking with Dan on April 26th, I suggested we meet for drinks and a further discussion at the Bitcoin 2023 conference on May 18th. In his declaration, Dan states that I requested that Ian Rock attend that discussion. That is incorrect. I invited Callum Rock, our Business Development Manager (because it was a business development conversation). This is shown in the Google calendar notification that I included as an exhibit to my first declaration. Ex. 16. Ian Rock was not in Miami or in attendance at the conference; I never intended for him to participate nor did I invite him.

4. In Dan's declaration, he states "When I asked what would happen with customers under 50 MW, or customers that cannot participate in CLR based on their load profile, Mr. McFarland's response was: 'we could probably build a cloud connector where we integrate with the CSPs and send the signal to turn on/off to Foreman.'" I am not sure what the "cloud connector" term refers to. I did not use that terminology. I believe Dan is mixing two

separate items together in his statement: one being a suggestion of how we could help customers without CLR capability (the lack of fast-response capability) and the other being customers who are CLR capable, but that use <50 MWs. (As another note, our proposal's focus was on potential joint customers in ERCOT in Texas.)

5. With respect to non-CLR customers: Not all data centers are capable of doing CLR, which requires the ability to change power usage very quickly, referred to as fast response. Our primary interest in talking to Dan was collaboration for CLR customers. But, he asked if there could be a way to use Lancium's software to also benefit non-fast response customers, so I responded with a way we could do so, if they were interested. Specifically, I said we could create a cloud-based (off-premises) offering of our Lancium Smart Response software and integrate with the Foreman platform for basic demand response. I believe this is what OBM does in their relationship with their other demand response partner, Voltus. Dan and I even discussed that we would need to do some API integration work for the software to work together, but that should be a light lift for both companies. I explained this could still be a value-add, with Lancium's sophistication in certain aspects of power management. I did not say OBM or any non-fast response customers would be required to use this option, or that this was a necessary part of our proposed relationship—Dan is the one who brought this up, so I suggested a potential option.

6. For customers that want to do CLR (fast-response), we prefer to have our
software running on-premises on our servers for the customer so that we
can instruct necessary power changes within very short time frames as
required under CLR operation. . Our target customer base for using
Lancium Smart Response in CLR capability would be customers with >50
MW of power usage. This is because, in general, these customers represent
a sufficient revenue potential in order to spend our sales time and
engineering efforts. This was a general guideline that I used to determine
where we spent our sales time efforts and engineering efforts. The >50 MW
target has nothing to do with CLR capability or a "cloud connector" or a
cloud version of our software. I never stated to Dan that our proposed
partnership would preclude OBM from working with customers under 50
MW on their own (as I discuss in my first declaration, I made clear that our
proposed relationship was non-exclusive). The 50 MW threshold just
related to the size of potential customer we would plan to pursue as potential
joint customers.

7. Dan reports that I proposed a "90/10 split on the CLR revenue, with
Lancium receiving 90% and OBM receiving 10%," and says the "terms
were extremely non-favorable to OBM." This is the split I proposed, but his
discussion is misleading. First of all, as I explained in my first declaration,
this is not how Dan actually reacted when I presented these terms. But also,
these terms actually were very favorable to OBM. Under our proposed
relationship, customers would be buying both Foreman from OBM, and

- 4 -

Lancium Smart response from Lancium. OBM would get 100% of the revenue from the Foreman portion of the sale, Lancium would get 0%. Then, we would be giving OBM 10% of the revenue from *our* product, Lancium Smart Response.  This revenue can be quite significant as the MWs under control increase. The idea was both companies might be getting more customers, so sharing revenue share could be worth it to us. I am still not aware of OBM's revenue and commercial model, because Dan never shared that with me. But, from what I have heard anecdotally, OBM would get significantly more from the 10% of Lancium Smart Response power management revenue per customer than OBM currently gets in total per customer from Foreman miner management.

8.  In advance of the May 9th call, I prepared a slide outlining the business terms for our proposed relationship. This is the document I intended to send Dan if he had returned the NDA I sent him on May 9th. I had a printed copy of this slide in front of me while talking to Dan on May 9th, and, while we were on the phone, I took handwritten notes on the paper of things Dan said. A true and correct copy of this slide with my contemporaneous notes is attached as Exhibit 20. To point out a few of my handwritten notes: the one on the bottom left reads "No exclusivity w/ voltus." This captured Dan's confirmation that OBM's existing power-management relationship with Voltus was non-exclusive, so they could also enter a (non-exclusive) relationship with us. My note in the bottom middle reads "Needs to look @ other chanl agmts." This captures part of Dan's response to the terms I

outlined, stating he needed to compare it to their other existing channel agreements. My note in the bottom right reads "not too much indigestion over agmt like this." This was the other part of Dan's response to the terms, as I noted in my first declaration.

9. Exhibit 20 contains sensitive commercial information that is not publicly available, including Lancium's pricing and revenue for projects. Publicly disclosing this information could cause commercial harm to Lancium, for example by allowing competitors to undercut Lancium's pricing.

10. I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge.

Executed on this 6th day of July, 2023.

_____

Scott McFarland

- 6 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OBM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 4:23-cv-1798 |
| | ) | |
| LANCIUM LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF BRANDON GREENFIELD IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

I, Brandon Greenfield, hereby declare as follows:

1. I am the Director of IT Security & Compliance at Lancium. In September 2022, I was the IT Controls Manager. My responsibilities included making sure that any system connected to Lancium's network had appropriate controls to ensure compliance, security and operating effectiveness. This included compliance with data security and data privacy regulations, handling of financial and other data subject to the Sarbanes-Oxley regulation, and other regulations. I have never had any role at Lancium relating to intellectual property or patents, or relating to business development.

2. I have reviewed a portion of OBM's brief filed on June 30th where they discuss my access to Foreman, and request for OBM's SOC 2 report, along with the portion of Dan Lawrence's declaration discussing the same. I submit this declaration to explain my involvement, and clarify suggestions made in their brief.

3. Lancium owns a Lancium Clean Campus site in Fort Stockton, Texas, where bitcoin miners or other data centers can locate their machines. Lancium contracts with a company, Digital Carpenters, to operate and monitor the site on a daily basis. Digital Carpenters uses the OBM Foreman software for automation and management of the bitcoin miner customers at Fort Stockton, and they use our Lancium Smart Response software for any power management functions.

4. Because the Fort Stockton site is on the Lancium network, I needed to be familiar with what controls need to be in place to be sure the software is appropriately secured, and being used appropriately. As an initial step, on August 25, 2022, I spoke with John Mathews from Digital Carpenters, and then sent him an email asking for a more in depth call to understand the IT controls and security. A true and correct copy of that email is attached as Exhibit 21. We realized there were certain questions they didn't know the answers to, so John emailed connecting me with Dan Lawrence from OBM, on September 12, 2022. Mr. Lawrence responded that day, offering to provide a SOC 2 report, and to talk by phone. A SOC 2 (Service Organizational Controls) report is a standard compliance reporting document for an offering, focused on its security, laying out the data security and other measures deemed appropriate to follow.

5. I responded on the morning of September 13th, taking him up on his suggestion of providing their SOC 2 report. He did not immediately respond, so I emailed him again on September 15th. Mr. Lawrence

responded that day, stating we needed a non-disclosure agreement in place. I replied asking if he wanted to use our NDA, or if he had one. He did not respond, so I followed up on September 20th.  A true and correct copy of those emails is attached as Exhibit 22.

6.   Dan and I scheduled a zoom call, but he canceled it, and it did not occur. On September 27th, 2022, he sent me an invite for a zoom call. A true and correct copy of that invite is attached as Exhibit 23. Mr. Lawrence emailed me on September 29th, apologizing for the email chain fizzling, cancelling our meeting, and attaching their NDA. I sent him a revised version later that day. Myself and Ian Rock from Lancium had to follow up numerous times over the next few months.  I was personally on email threads into January, 2023 for this purpose. I have reviewed the first declaration of Ian Rock, and Lancium's Exhibits 2-6.  These are consistent with my understanding of the timeline, and accurately reflect the emails I was copied on during this time to try and get the SOC 2 report.  Ian Rock forwarded me the SOC 2 report received from OBM on February 27th, 2023.  A true and correct copy of the email attaching the SOC 2 report is attached as Exhibit 24, and a true and correct copy of the SOC 2 report itself is attached as Exhibit 25. My only involvement in correspondence with OBM surrounded trying to get the SOC 2 report, for our internal compliance purposes.

7.   OBM also discusses the fact that I had access to Foreman. Again, as Fort Stockton was a Lancium owned site, we needed visibility into how the site was operating, whether the customers' assets there were online and working

as expected, and to ensure Foreman was being used in line with appropriate data security measures. I received limited access to the Fort Stockton Foreman software on September 12, 2022, for this purpose. My access allowed me to see the activity of the miners operating at Fort Stockton, and whether they were up online (mining for bitcoin, called "hashing") as expected, or having issues.

8. From September 2022 into January 2023, I regularly logged in for this purpose. I do not have access to the Foreman code, I do not have access to the host machine, and I do not know what kinds of power management Foreman is capable of. I have only seen the implementation of Foreman at the Fort Stockton facility, and it is not used for any power management functions there.

9. I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge.

Executed on this 6th day of July, 2023.

Brandon Greenfield

# EXHIBIT 19











# EXHIBIT 20
# (Public Version)



## Partnership Proposal
Ensuring joint success

**LANCIUM**

- ERCOT-specific (Identify any current customers that we want to exclude)
- Customers >50MWs and will use both platforms, floor for creating most impactful and outsized returns for customers
- Customers capable of becoming a CLR
- Deal registration process for joint engagement to avoid competitive conflicts
- Not exclusive partnership, preferred relationship
- Foreman provides miner / fleet mgmt., transacts directly with end-user
- Lancium provides Smart Response (req onsite equip) + Power Trading Desk, transacts directly with end-user
- Any revenue share would be settled between Lancium and Foreman outside of customer
- Lancium install fee ▮
- Support fee $▮ annually
- Using $▮ MWh as representative pricing for Smart Response software + Power Trading Desk & Services
- Lancium 90% & Foreman 10% revenue share of Smart Response software fee
- Example 1: 50MWs @ $▮ MWh = ▮ Lancium ▮ Foreman
- Example 2: 300MWs @ $▮ MWh = ▮ Lancium ▮ Foreman

*Handwritten annotations:*
- NO SALES REP
- OTHER REGIONS?
- CHANNEL PARTNER LIKE
- CLR
- N-CLR CLOUD-API
- CSP/QSE? NO
- NOT TOO MUCH INDIGESTION OVER AGMNT LIKE THIS
- NO EXCLUSIVITY w/ VOLTUS
- NEEDS TO LOOK @ OTHER CHNL AGMNTS
- REFERRAL FEE 1-TIME VS RECURRING

*DRAFT for Partnership Discussion*

3

# EXHIBIT 21

| | |
|---|---|
| **From:** | John Mathews <john@digitalcarpenters.io> |
| **Sent:** | Thursday, August 25, 2022 11:59 AM |
| **To:** | Brandon Greenfield |
| **Cc:** | Devin Frith; Ian Rock; Jason Marshall; Thomas Salvatore; Vitor Henrique; clayton@digitalcarpenters.io; lawson@digitalcarpenters.io |
| **Subject:** | Re: Foreman IT Controls |

Adding Devin for visibility.

Tuesday of next week at 3 pm CT work?

On Thu, Aug 25, 2022 at 11:54 AM Brandon Greenfield <brandon.greenfield@lancium.com> wrote:
Hello John,

Thank you for the Foreman walkthrough today. It was great to see how the tool improves your operations. As I mentioned at the end of the meeting, I'd like to set up a call to understand more about the IT controls and security of the tool. My schedule next week is reasonably open/flexible. Let me know what works for you and your team. Operations comes first in my mind, so we do not need to rush or squeeze in the meeting. I've included some of the topics below for your reference.

Topics to Discuss:

- Access rights:
  - Who has access?
  - What rights/privileges do they have?
  - Who are the administrators?
  - Can we build custom roles?
  - Who can change miner pool data? Can we set up an alert for those changes?
  - How is access requested/created
- What other systems does it interface with?
- How is data retained? Backups?
- Audit logs
- Miner Password query
- Changes
  - Who can write code?
  - How is it tested/approved?
- Foreman Company
  - Do they have a third party audit of their environment?
  - SOC Report? ISO?

Regards,

**Brandon Greenfield, CISSP, CISA**

IT Controls Manager

Lancium LLC

The Woodlands Towers
**9950 Woodloch Forest Drive**

**The Woodlands**

**Texas 77380**

281-789-8676

**CONFIDENTIALITY NOTICE:** The information in this email may be confidential and/or privileged. This email is intended to be reviewed by only the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this email and its attachments, if any, or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by return email and delete this email from your system.

--

John Mathews
Founder & CEO | Digital Carpenters
312.451.4844

# EXHIBIT 22

| | |
|---|---|
| **From:** | brandon.greenfield@lancium.com |
| **To:** | "Daniel Lawrence" |
| **Cc:** | "John Mathews" |
| **Subject:** | RE: Lancium IT Security intro |
| **Date:** | Tuesday, September 20, 2022 11:43:42 AM |
| **Attachments:** | image001.jpg |

Hello Dan,

Following up on my email below. Thank you.

Regards,

Brandon Greenfield

**From:** brandon.greenfield@lancium.com <brandon.greenfield@lancium.com>
**Sent:** Thursday, September 15, 2022 10:19 AM
**To:** 'Daniel Lawrence' <dan@obm.mn>
**Cc:** 'John Mathews' <john@digitalcarpenters.io>
**Subject:** RE: Lancium IT Security intro

No problem Dan. We have an NDA our legal team has approved, if that works for you. If not could you send me your NDA, I'll have our legal team look over it and then we can get it signed.

Regards,

Brandon Greenfield

**From:** Daniel Lawrence <dan@obm.mn>
**Sent:** Thursday, September 15, 2022 10:16 AM
**To:** brandon.greenfield@lancium.com
**Cc:** John Mathews <john@digitalcarpenters.io>
**Subject:** Re: Lancium IT Security intro

Hey Brandon,

To share our SOC 2, we unfortunately require an NDA.  Do you have an email where I can send one?

Thanks,
Dan

On Thu, Sep 15, 2022 at 10:12 AM <brandon.greenfield@lancium.com> wrote:

> Good morning Dan,
>
>     Just following up on the request below. Hope you are having a good week. Please see my

number below if you have any questions/concerns.

Regards,

Brandon Greenfield
IT Controls Manager
**Lancium LLC**
**The Woodlands Towers**
**9950 Woodloch Forest Drive**
**The Woodlands**
**Texas 77380**
**281-789-8676**

---

**From:** brandon.greenfield@lancium.com <brandon.greenfield@lancium.com>
**Sent:** Tuesday, September 13, 2022 7:38 AM
**To:** 'Daniel Lawrence' <dan@obm.mn>
**Cc:** 'John Mathews' <john@digitalcarpenters.io>
**Subject:** RE: Lancium IT Security intro

Hello Dan,

    Great to meet you too! I think your SOC 2 would answer the majority of questions. Could you send it over when you have a chance?

Regards,

Brandon Greenfield

---

**From:** Daniel Lawrence <dan@obm.mn>
**Sent:** Monday, September 12, 2022 7:15 PM
**To:** John Mathews <john@digitalcarpenters.io>
**Cc:** Brandon Greenfield <brandon.greenfield@lancium.com>
**Subject:** Re: Lancium IT Security intro

Hi Brandon,

It's great to meet you!

Happy to answer any questions you may have.  We are a SOC 2 Type II company and can provide a SOC report, if needed.  Happy to also hop on a call to chat.

Thanks,
Dan

On Mon, Sep 12, 2022 at 2:30 PM John Mathews <john@digitalcarpenters.io> wrote:

> Dan,
>
> Meet Brandon. He is who I texted about that will have some questions around Lancium's data security on your platform. I'll leave it to you guys to take from here.
>
> Cheers,
> John
> --
>
> John Mathews
> Founder & CEO | Digital Carpenters
> 312.451.4844

--
Daniel Lawrence
CEO
Schedule a Meeting
Foreman.mn - OBM, Inc.
1 N Haven Street, Suite 3
Baltimore, MD 21224

**CONFIDENTIALITY NOTICE:** The information in this email may be confidential and/or privileged. This email is intended to be reviewed by only the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this email and its attachments, if any, or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by return email and delete this email from your system.

--
Daniel Lawrence
CEO
Schedule a Meeting
Foreman.mn - OBM, Inc.
1 N Haven Street, Suite 3
Baltimore, MD 21224

# EXHIBIT 23

| **Subject:** | Foreman Meeting |
|---|---|
| **Location:** | https://us02web.zoom.us/j/85659831869 |
| | |
| **Start:** | Thu 9/29/2022 1:30 PM |
| **End:** | Thu 9/29/2022 1:45 PM |
| **Show Time As:** | Tentative |
| | |
| **Recurrence:** | (none) |
| | |
| **Meeting Status:** | Not yet responded |
| | |
| **Organizer:** | dan@obm.mn |

Daniel Lawrence is inviting you to a scheduled Zoom meeting.

Topic: Foreman Meeting
Time: Sep 29, 2022 02:30 PM Eastern Time (US and Canada)

Join Zoom Meeting
https://us02web.zoom.us/j/85659831869

Meeting ID: 856 5983 1869
One tap mobile
+13092053325,,85659831869# US
+13126266799,,85659831869# US (Chicago)

Dial by your location
+1 309 205 3325 US
+1 312 626 6799 US (Chicago)
+1 646 558 8656 US (New York)
+1 646 931 3860 US
+1 301 715 8592 US (Washington DC)
+1 669 444 9171 US
+1 669 900 9128 US (San Jose)
+1 719 359 4580 US
+1 253 215 8782 US (Tacoma)
+1 346 248 7799 US (Houston)
+1 386 347 5053 US
+1 564 217 2000 US

Meeting ID: 856 5983 1869
Find your local number: https://us02web.zoom.us/u/kbL3Bc3o8t

**When**
Thursday Sep 29, 2022 · 1:30pm – 1:45pm (Central Time - Chicago)

**Location**
https://us02web.zoom.us/j/85659831869
**View map**

**Guests**
dan@obm.mn - organizer
brandon.greenfield@lancium.com
**View all guest info**

**Reply** for brandon.greenfield@lancium.com



Invitation from Google Calendar

You are receiving this email because you are subscribed to calendar notifications. To stop receiving these emails, go to Calendar settings, select this calendar, and change "Other notifications".

Forwarding this invitation could allow any recipient to send a response to the organizer, be added to the guest list, invite others regardless of their own invitation status, or modify your RSVP. Learn more

# EXHIBIT 24

| | |
|---|---|
| **From:** | Ian Rock |
| **To:** | Brandon Greenfield; Ryan McKenny |
| **Subject:** | Fwd: Completed: Complete with DocuSign: SOC 2 - Bridge Letter with signature.pdf, OBM, Inc. SOC2 Type II Report... |
| **Date:** | Monday, February 27, 2023 2:10:11 PM |
| **Attachments:** | SOC 2 - Bridge Letter with signature.pdf |
| | OBM, Inc. SOC2 Type II Report - Final.pdf |

---------- Forwarded message ---------
From: **Ashley Lipa via DocuSign** <dse_NA3@docusign.net>
Date: Mon, Feb 27, 2023 at 1:25 PM
Subject: Completed: Complete with DocuSign: SOC 2 - Bridge Letter with signature.pdf,
OBM, Inc. SOC2 Type II Report...
To: Ian J Rock <ian.rock@lancium.com>



Your document has been completed

**VIEW COMPLETED DOCUMENTS**

**Ashley Lipa**
llipa@obm.mn

All parties have completed Complete with DocuSign: SOC 2 - Bridge Letter with
signature.pdf, OBM, Inc. SOC2 Type II Report....

Powered by

**Do Not Share This Email**
This email contains a secure link to DocuSign. Please do not share this email, link, or access
code with others.

**Alternate Signing Method**
Visit DocuSign.com, click 'Access Documents', and enter the security code:
382DBCD5B0F34654B83D8522432B35683

**About DocuSign**
Sign documents electronically in just minutes. It's safe, secure, and legally binding. Whether you're in an office, at home, on-the-go -- or even across the globe -- DocuSign provides a professional trusted solution for Digital Transaction Management™.

**Questions about the Document?**
If you need to modify the document or have questions about the details in the document, please reach out to the sender by emailing them directly.

**Stop receiving this email**
Report this email or read more about Declining to sign and Managing notifications.

If you are having trouble signing the document, please visit the Help with Signing page on our Support Center.

 Download the DocuSign App

This message was sent to you by Ashley Lipa who is using the DocuSign Electronic Signature Service. If you would rather not receive email from this sender you may contact the sender with your request.

--

Ian J Rock
Vice President IT Operations
**Lancium LLC**



**The Woodlands Towers**
**9950 Woodloch Forest Drive**
**The Woodlands**
**Texas 77380**
Email: ian.rock@lancium.com
Phone: 713 839 5246

# EXHIBIT 25
# (Filed Under Seal)